**James P. MITCHELL, Secretary of Labor, Plaintiff-Appellant,**

v.

**PASCAL SYSTEM, Inc., Defendant-Appellee.**

**No. 11300.**

United States Court of Appeals Seventh Circuit.

Oct. 12, 1955.

**392**

Stuart Rothman, Sol. of Labor, Bessie Margolin, Asst. Sol., Washington, D. C., Herman Grant, Chicago, Ill., William W. Watson, Attys., U. S. Dept. of Labor, Washington, D. C., for appellant.

Adelbert Brown, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This action was brought by the Secretary of Labor to enjoin the defendant, Pascal System, Inc., from continuing its alleged violations of overtime and record-keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The District Court concluded: "The defendant, in the business of renting automobiles and trucks, does not come within the scope of the Fair Labor Standards Act of 1938, as amended." On appeal the Government argues only that the defendant, Pascal System, does come within the scope of the Act.

The appeal presents but two questions, both having to do with the application of the Fair Labor Standards Act: (1) are the defendant's employees engaged in interstate commerce or the production of goods for commerce; and (2) does the defendant's business meet the requirements for exemption provided by Section 13(a) of the Act, 29 U.S.C.A. § 213 (a).

Section 7 of the Fair Labor Standards Act, under which this suit is brought, states that " * * * no employer shall employ any of his *employees who is engaged in commerce or in the production of goods for commerce* for a work-week longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a). (Emphasis added.) Thus, the Act applies to the defendant only if its employees are engaged in commerce or the production of goods for commerce.

The Act defines "commerce" as meaning: " * * * trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C.A. § 203(b).

The Act defines "produced" as " * * * manufactured, mined, *handled, or in any other manner worked on in any State;* and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C.A. § 203(j). (Emphasis added.)

The District Judge found that the defendant is engaged in renting trucks and automobiles to both individuals and business firms, and that all of its employees are engaged in those activities. It was further found that the defendant, whose place of business is in Chicago, buys more cars than it needs in its own business in order to take advantage of lower fleet-lot rates. The extra cars are then sent to other similar rental agencies outside of Illinois. These cars are delivered to defendant by employees of the companies from which they are purchased and are driven on to the out-of-state rental agencies by the employees of those agencies. But the defendant admits that its employees perform certain services upon these cars, such as the necessary paper work, mechanical check ups and filling with gas and oil, to prepare them for their journeys.

Under the provisions of the Fair Labor Standards Act, the defendant's employees are engaged in commerce or the production of goods for commerce on the strength of either one of two different aspects of their employment. They perform necessary functions in maintaining and renting cars and trucks some of which furnish interstate "transportation" for the individuals and firms who rent them and, in the case of cars "forwarded" to other rental companies, for the firms that have purchased them. The defendant's employees also perform necessary services on cars that are leased to industrial firms which use them in the production of goods for commerce.

Employees who neither personally produce goods nor transport them are nevertheless engaged in the production of goods for commerce within the meaning of the Act, if they perform a function that is necessary to the production of goods for commerce. Union National Bank of Little Rock, Arkansas v. Durkin, 8 Cir., 207 F.2d 848; Grant v. Bergdorf & Goodman Co., 2 Cir., 172 F.2d 109. In these cases maintenance workers and elevator operators in buildings where goods for commerce were produced were held to be engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act although some of the employees involved were not even employees of the firms that produced the goods.

It has been held that employees of a "drive-it-yourself" car and truck rental company were engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act. Hertz Drivurself Stations v. United States, 8 Cir., 150 F.2d 923. The court there said: " * * * any employee of an owner of automobile trucks or passenger cars, which are leased to others for interstate use, whose work has 'a close and immediate tie' (Kirschbaum Co. v. Walling, 316 U.S. 517, 525, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638) with the process of keeping such vehicles generally in condition or in readiness for such use, is engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act." 150 F.2d at page 926.

With regard to defendant's practice of purchasing extra cars in order to obtain fleet prices and keeping them a short time until they are "forwarded" to other car rental concerns outside of Illinois, it has been held that wholesalers who handle goods solely within one state but while they are in the process of being shipped between states are engaged in interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. By processing and servicing cars for forwarding to firms outside of Illinois the defendant's employees are actually handling cars that are in the process of being shipped interstate, and it is not significant that defendant's employees do not actually drive the cars across state lines.

Since it and its employees are engaged in interstate commerce or the production of goods for commerce, the defendant comes within the scope of the Act unless it can bring itself within the exemptions provided by Section 13 of the Act, 29 U.S.C.A. § 213, for retail or service establishments.

29 U.S.C.A.

"§ 213.. Exemptions

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide * * * local retailing capacity * * *; or (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods.or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale * * *."

Section 213 creates two exceptions which are material to this case. The first is dependent upon the functions of the employee and arises when he is employed in a "bona fide local retailing capacity." The second exception turns on the nature of the business of the employer, and arises only when in that business 75 per cent of the dollar value of the goods or services sold are not sold for resale.

■ Courts have tended to ignore the first exception created by Section 213 (based on the employee's function) especially where, as the trial court found in this case, all of the employees are engaged in the principal activities of the employer. In other words, an employee is not employed in a "local retailing capacity" if he contributes in any necessary way to activities of his employer which are in interstate commerce. It is, therefore, only necessary for us to look at the activities of the defendant company in determining whether or not its employees fall within the exemption.

The Government claims that defendant is engaged in two activities that take it out of the class of "retail or service establishment," as that phrase is used in Section 13(a) of the Act. First, the defendant is constantly selling its used cars to second hand dealers and buying new ones. The cars are admittedly sold for resale, and the record indicates that the amount of money received through these sales amounts to more than half of the defendant's "annual dollar volume of sales of goods or services". Of course, this means that if these sales are counted for the purposes of the exemption, defendant would not be receiving 75 per cent of its total dollar volume from sales "not for resale", and would, therefore, not be a "retail or service establishment" as defined by Section 13(a).

Pascal's defense to this argument was that it was not in the business of selling cars, and that these were only sales of capital assets as necessitated by the nature of its rental business. For this reason, it argued, the sales of used cars should not be counted in its "dollar volume of sales" for purposes of the exemption. The District Court upheld the defendant on this contention.

■■ Section 13(a) (2) means simply that an establishment is not retail if more than 25 per cent of its annual dollar volume of sales of goods or services is for resale. It does *not* say that the establishment must be in the business of selling the particular goods before they can be counted, nor do we believe that that is a reasonable interpretation. The section is clear and we see no reason to add restrictions that are not expressed in the act itself. It is our duty to construe it strictly, in favor of the Government. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095; Woods Lumber Co. v. Tobin, 6 Cir., 199 F.2d 455.

In Walling v. Consumers Co., 7 Cir., 149 F.2d 626, a case involving a coal dealer, this court held that the term "retail dealer" as used in Section 13(a) (2) of the Fair Labor Standards Act was not limited by the meaning of that same term as used in the war time Bituminous Coal Code, under which the defendant also operated. There is no more reason why the Internal Revenue Bureau's treatment of this defendant's activites should be binding for purposes of the Fair Labor Standards Act. And even if we did feel compelled by the Revenue Bureau's action to treat defendant's sales of used cars as sales of capital assets, we

would still have no reason for omitting them in determining defendant's right to exemption under Section 13(a) (2).

■ The defendant here regularly sold cars it had been using in its rental business. These cars were bought to be used as rental cars for a time and then to be sold for resale. This general business practice was not denied. That activity, whether conversion of capital assets or not, takes defendant's operations out of the term "retail" as that term is defined in Section 13(a) (2) of the Fair Labor Standards Act.

We feel that this position is in agreement with the policy of the exemption. The sale of such assets has as much effect on both the company and the surrounding business community as does the sale of articles of manufacture. When a business sells so great a part of its capital assets for resale each year that it amounts to more than 25 per cent of its total sales, that activity has a definite effect on commerce. Such a business does not fall into the same category as the corner grocery or filling station for which, all courts agree, the exception was created. Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383; Reynolds v. Salt River Valley Water Users Ass'n, 9 Cir., 143 F.2d 863, certiorari denied 323 U.S. 764, 65 S.Ct. 117, 89 L.Ed. 611.

An argument somewhat analogous to the defendant's was made in Northwestern-Hanna Fuel Co. v. McComb, 8 Cir., 166 F.2d 932. There the appellant claimed exemption from the Fair Labor Standards Act under Section 13(a) (2), arguing that sales to dealers should not be counted because they were made merely to accommodate business associates, and did not produce profits. In refusing to accept this argument the court said: "* * * they involved work operations which appellant's employees were engaged to perform; and the purchasers were admittedly acquiring the coal for resale purposes * * *." 166 F.2d at page 937.

The same considerations are present in our case. Whether the sales of the used cars were sales of goods or capital assets, they involved a considerable amount of work which the defendant's employees were required to perform. The sale of capital assets large enough to produce over 50 per cent of the total receipts of a business every year is bound to have a great effect on the company and its employees. And if those sales are for resale, the company cannot maintain that it is still predominantly a retail establishment and within the exemption of the Fair Labor Standards Act.

Although the defendant tries to use the Internal Revenue Bureau's treatment of its business as an argument in its favor, we find the Bureau's published opinion on defendant's general type of business interesting. In the Internal Revenue Bulletin No. 13, published June 22, 1953, Revenue Rule 108 has this to say.

"* * * *

"It appears that a number of taxpayers in the business of leasing automobiles buy their automobiles in wholesale quantities either at fleet discounts, at agents' prices as dealers, or through affiliates, and lease them for a period of a year or less, or for a stated number of miles substantially less than the normal mile-life of an automobile. At the expiration of such lease the automobiles are sold, either at wholesale or retail prices, thereby availing the taxpayer of what would normally be considered to be the dealer's profits. In the usual case, the gains from such sales constitute a substantial portion of the taxpayer's income.

"* * * *

"It is the opinion of this Bureau that the custom of buying cars at wholesale prices, or at fleet discounts, and leasing them for substantially less than their normal useful life and selling them on the wholesale or retail market, constitutes dealing in automobiles. A taxpayer who customarily engages in such operations is in the business of dealing in automobiles as well as in the business of leasing them. Un-

**396**

der such circumstances, the automobiles constitute 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business' within the meaning of section 117(j) of the Code, and any gain from the sale of such automobiles may not be treated as a capital gain under section 117(j) of the Code."

For the reasons discussed above, we cannot escape the conclusion that as a matter of law the trial court should have considered the amount received by defendant from the sale of used cars part of the dollar value of his sales of goods and services. It is conceded by defendant that if these sales are included, it does not qualify for the Section 13(a) exemption.

Since this record clearly shows that the defendant's employees are engaged in commerce or in the production of goods for commerce and that the defendant's business does not bring it within the exemption provided by the Fair Labor Standards Act, the judgment of the District Court is Reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.