**Curtis G. HOLLON, Plaintiff,**

v.

**DIXIE DRIVE-IT-YOURSELF SYSTEM MONTGOMERY CO., Inc., Defendant.**

**Civ. No. 1319-N.**

United States District Court
M. D. Alabama, N. D.
Aug. 12, 1957.

Frank J. Mizell, Jr., and Charles H. Wampold, Jr., Montgomery, Ala., for plaintiff.

Jack Crenshaw, Montgomery, Ala., for defendant.

JOHNSON, District Judge.

Plaintiff brings this action as provided by the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., for the recovery of unpaid wages, overtime compensation, statutory damages, attorneys' fees, and court costs, plaintiff alleging that he was employed by the defendant on June 3, 1955, to around December 31, 1956; that he is entitled to recover as claimed, pursuant to the provisions of the Act, by virtue of the fact that the defendant was during this period of time engaged in

interstate commerce, or the production of goods for commerce, and that plaintiff's duties were such during this period of time that he was engaged in interstate commerce, or such related activities thereto, which bring him under the provisions of the Act. The defendant denies liability, asserting that its business operations were such that it was not engaged in interstate commerce, or the production of goods for commerce, during this period of time and that plaintiff's duties were such that he was not engaged in interstate commerce, or related activities thereto, which might bring plaintiff under the provisions of the Act. Defendant further asserts the affirmative defense that it is exempt from the operation of the Act by virtue of the provisions of § 13(a) (2), 29 U.S. C.A. § 213(a) (2), which relate to retail or service establishments.

This cause was submitted for a determination of these issues upon the pleadings and the proof, the latter consisting of the oral testimony of several witnesses and various exhibits thereto. In making these determinations, the Court will, in this memorandum opinion, embody herein the appropriate findings of fact and conclusions of law.

The defendant, Dixie Drive-It-Yourself System Montgomery Co., Inc., is an Alabama corporation owned solely by one family residing here in Montgomery, Alabama, consists of one establishment located here in Montgomery, Alabama, and engages in the business of renting and leasing trucks and automobiles to commercial, industrial, and individual users. Defendant during the critical period maintained and serviced vehicles so leased in order that they could be used by its customers as contemplated. All the rentals and leases were made in defendant's offices in Montgomery, and defendant's customers used the leased and rented vehicles for various purposes. These purposes included, in certain instances, use in interstate commerce and in the production of goods for commerce. Some of these vehicles were rented for short trips on a daily or hourly basis

and some were long-term leases up to a year or longer. Defendant occasionally acquired from outside the State of Alabama some of its vehicles that it rented.

During the period plaintiff was employed by defendant, the Alabama Rendering Company leased a truck from this defendant and used this vehicle to collect fats and animal carcasses for the purpose of rendering them into food for animals and tallow. These end-products of the Alabama Rendering Company were then distributed by that company throughout the United States and parts of Europe. Another example is that, during the period here involved, the firm of Burford-Toothaker, a firm that sells heavy road equipment in Alabama and Florida, rented two of the defendant's vehicles, which were used by salesmen of the heavy equipment company on a yearly basis in the State of Florida. These vehicles on occasion were used by these salesmen in returning to the home office of their company here in Montgomery, Alabama.

The plaintiff was employed during this period of time by this defendant as a "front boy." This job necessitated plaintiff's checking defendant's leased and rented vehicles in and out of its place of business, filling them with gas and oil, making minor repairs, washing and lubricating them, and generally servicing and maintaining these vehicles so that they could be used by defendant's customers. During this period of employment, plaintiff worked from nine to ten hours per day performing these duties for six days every week, and for seven days each third week. He received as compensation for this work less than the minimum wage provided by the Act and no overtime pay for his work in excess of forty hours for each work week, as required by the Act. The Court further finds that all the vehicles rented or leased by the defendant, with the exception of those rented Burford-Toothaker, were rented for use within the State of Alabama; that all sales and/or services made by this defendant were made solely within the State of Alabama with the exception of an occasional vehicle that

had been converted by the individual renting it and recovered in some place a considerable distance from Montgomery, Alabama. The Court finds that the sales of this defendant in such instances and the sales of used vehicles of defendant to certain used car dealers amounted to substantially less than 10% of the annual income of this defendant for each of the two years involved. Specifically, in the year 1955 defendant's dollar volume of sales of goods and/or services was $176,667.62. Its total car sales amounted to $13,757.50. In the year 1956, defendant's dollar volume of sales of goods and/or services was $153,767.71. The total received from all vehicle sales for that year was $8,922.83.

Two questions are, therefore, presented. They are:

(1) Was the defendant and the plaintiff, as defendant's employee, during this period of time engaged in interstate commerce for the production of goods for commerce within the meaning of the Fair Labor Standards Act?

(2) Did the defendant's business and the manner in which it was operated meet the requirements for exemption as provided by § 13 of the Act?

■ In the opinion of this Court, the facts in this case, with one important exception, are exactly the same as the facts before the Court in the case of Mitchell v. Pascal System, 7 Cir., 1955, 226 F.2d 391, 393. There the defendant was engaged in renting trucks and automobiles to both individuals and business firms. The defendant's place of business was in Chicago, Illinois. The employee concerned in that case performed services on these cars such as the plaintiff performed for the defendant in the case now before this Court. The exception between that case and the case here is that in the Pascal System case the defendant purchased more cars than it needed in its own business in order to take advantage of lower fleet rates. These extra cars were then sent by that defendant to other similar rental agencies outside the State

of Illinois. These cars were delivered to the out-of-state rental agencies by the employees of the agencies purchasing them. The employees of Pascal System, however, performed certain necessary services upon these cars to prepare them for these out-of-state deliveries. There is no such activity by this defendant or this plaintiff alleged or proven.

In dealing with the first question, that is, whether this plaintiff-employee was during this period of employment by this defendant engaged in interstate commerce, or the production of goods for commerce within the meaning of this Act, the Pascal case is on all fours. This question was answered by the court in the Pascal case as follows:

"Under the provisions of the Fair Labor Standards Act, the defendant's employees are engaged in commerce or the production of goods for commerce on the strength of either one of two different aspects of their employment. They perform necessary functions in maintaining and renting cars and trucks some of which furnish interstate 'transportation' for the individuals and firms who rent them and, in the case of cars 'forwarded' to other rental companies, for the firms that have purchased them. The defendant's employees also perform necessary services on cars that are leased to industrial firms which use them in the production of goods for commerce.

"Employees who neither personally produce goods nor transport them are nevertheless engaged in the production of goods for commerce within the meaning of the Act, if they perform a function that is necessary to the production of goods for commerce. Union National Bank of Little Rock, Arkansas v. Durkin, 8 Cir., 207 F.2d 848; Grant v. Bergdorf & Goodman Co., 2 Cir., 172 F. 2d 109.

\* \* \* \* \* \*

"It has been held that employees of a 'drive-it-yourself' car and truck rental company were engaged in the

production of goods for commerce within the meaning of the Fair Labor Standards Act. Hertz Drivurself Stations v. United States, 8 Cir., 150 F.2d 923. The court there said: ' * * * any employee of an owner of automobile trucks or passenger cars, which are leased to others for interstate use, whose work has "a close and immediate tie" (Kirschbaum Co. v. Walling, 316 U.S. 517, 525, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638) with the process of keeping such vehicles generally in condition or in readiness for such use, is engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act.' 150 F.2d at page 926."

The exception between the facts in the Pascal System case and the case now before this Court does not change the picture insofar as this first question is concerned, since, as the court there held, the defendant's employees were engaged in commerce, or the production of goods for commerce, on the strength of "either one of two different aspects of their employment." The court there went ahead and found that they were engaged in commerce, or the production of goods for commerce, on the strength of both aspects of their employment.

█ This Court, therefore, concludes that this defendant was, during the time concerned in this litigation, engaged in commerce, or the production of goods for commerce within the meaning of the Fair Labor Standards Act and that unless this defendant comes within the scope of the exemption provided by § 13 of the Act relating to retail or service establishments, it must be bound by all the provisions of the Fair Labor Standards Act.

That portion of the Act relating to the exemption for retail or service establishments is as follows:

"*Exemptions* Sec. 13.(a). The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * * (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: *Provided*, That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which establishment is located; * * *."

This exemption provides three tests for determining whether or not an establishment comes within its scope; they are:

(1) More than half of the establishment's sales or services must be made or rendered within the state where the establishment is located.

(2) At least 75% of the sales or services must not be for resale.

(3) At least 75% of the sales or services must be recognized as retail sales or services in the particular industry.

As was noted above, in the Pascal System case where the court found that the defendant did not come within the exemption relating to retail or service establishments, the practice of that defendant in selling its used cars and forwarding many cars to other rental companies outside the state, resulted in its receiving, from that practice, money amounting to more than half of its annual dollar volume of sales of goods or services. In the case now before the

Court, the defendant by the disposition of such vehicles received an amount substantially less than 10% of its "annual dollar volume of sales of goods or services." As a matter of fact, in this case, the testimony clearly shows that at least 90% of the annual dollar volume of sales of goods or services (or both) is for retail sales or services rendered within the State of Alabama. Thus, not only "more than half" but practically all the defendant's sales or services were made and rendered within the State of Alabama. It further appears from the evidence that not only "at least 75%" but practically all the sales or services of this defendant were not for resale, and it further appears from the only evidence presented to the Court, either by this plaintiff or this defendant, the defendant did, during this critical period, operate what was recognized, in this particular industry, as a retail sales or service operations.

The cases cited by the parties that were decided before the 1949 amendments to this exemption section and the cases decided since those amendments that ignored the amendments and the legislative history pertaining thereto are not considered by this Court applicable or controlling. As was stated by the Fifth Circuit Court of Appeals in Boisseau v. Mitchell, 5 Cir., 1955, 218 F.2d 734, 737:

> "We think it was clearly the purpose and intention of Congress to clarify the old law as to what constituted 'the greater part' and to abolish the old test as to what is 'retail.' In doing so, however, it created a difficult problem of administration, for the courts must now identify the 'industry' of which the business is a part and determine whether the sales or services are considered 'retail' in that industry.

> \*    \*    \*    \*    \*    \*

> "We think it clear that while the burden of proof is on the party seeking refuge in the exemption, the problem of identifying the industry

and determining the classification of the sales or services is one of law to be decided from all the facts in each case, including the nature of the business activities themselves, the practices of firms and organizations associated or doing business with the establishment involved, the testimony of 'experts' and the general commercial status of the establishment, all considered in the light of experience and common knowledge."

This Court, therefore, concludes from the facts in this case that defendant has sustained the burden of proving that it comes within the exemption as provided by § 13(a)(2) of the Act and is, therefore, entitled to the exemption as a retail or service establishment. It necessarily follows that plaintiff is not entitled to recover of this defendant, and an order will be drawn and filed accordingly.