**ACME CAR & TRUCK RENTALS, INC.,**
Appellant,

v.

**James HOOPER et al., Appellees.**

No. 20676.

United States Court of Appeals
Fifth Circuit.

May 6, 1964.

Rehearing Denied July 17, 1964.

Reginald J. Bell, Erle Phillips, Fisher & Phillips, Atlanta, Ga., for appellant.

J. R. Goldthwaite, Jr., Adair, Goldthwaite & Stanford, Atlanta, Ga., for appellees.

Before BELL, Circuit Judge, and INGRAHAM,* District Judge.

INGRAHAM, District Judge.

This is an appeal by an employer from a judgment for back wages rendered in favor of four employees under the provisions of the Fair Labor Standards Act.[1] The appellant, Acme Car & Truck Rentals, Inc., (defendant below and herein sometimes referred to as defendant, also referred to as rental company) is a Georgia corporation engaged in the business of renting automobiles and trucks to commercial, industrial and individual users on an hourly, daily, weekly or monthly basis. A related corporation, Acme Motor Leasing Co., Inc., (hereinafter referred to as the leasing company) is engaged in long term leasing of automobiles and trucks for periods of one year or more. Leasing is distinguished from renting on the basis that a written contract for one year or more is a leasing agreement.

The two companies are operated as separate corporate enterprises and reimburse each other for revenue lost by virtue of loans of vehicles from one to the other and similar matters. They maintain separate books and records, file separate tax returns, and separate insurance policies are carried. The daily operating reports, though kept in the same ledger by the same person, are separated by being placed on opposite sides of the record sheet. However, these two companies have the same officers, stockholders and a common Vice-President and General Manager, as well as a common assistant to the President. The principal activities of the two corporations are conducted from the same building and facilities. All hourly employees are on the payroll of the renting company, but perform all services necessary to the operation of both corporations. Services of these employees are furnished to the leasing company at a prearranged hourly figure which is computed on a cost basis. Gas, tires and parts are sold by the renting company to the leasing company at cost, and the title to vehicles is transferred by the renting company to the leasing company at book value. No sales, use, or income tax is charged to these inter-company transactions.

In the district court, the defendant renting company interposed as a defense its exemption from the Fair Labor Standards Act by virtue of Section 13(a) (2), 29 U.S.C.A. § 213(a) (2). This section provides:

"Exemptions

"Sec. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to * * *

"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of

---

* Judge Cameron, the third judge constituting the Court originally hearing this case, died after argument but before decision. Consequently, this decision and opinion is rendered by a quorum pursuant to Title 28 U.S.C.A. § 46(c) and (d).

1. 52 Stat. 1060 (1938), as amended, 29 U.S.C.A. § 201 et seq. (1958). Subsequent amendments on May 5, 1961, were not operative during the period for which back wages are sought.

whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * * "

This exemption provides three tests for determining whether or not an establishment comes within its scope; they are:

(1) More than half of the establishment's sales or services must be made or rendered within the state where the establishment is located;

(2) At least 75% of the sales or services must not be for resale;

(3) At least 75% of the sales or services must be recognized as retail sales or services within the particular industry.

■ Before any of these tests may be applied there must first be a determination of what constitutes the "establishment". And this determination, as well as the classification of the sales or services as either retail or non-retail, is a problem of law to be decided from all the facts in each case. See, Boisseau v. Mitchell, 218 F.2d 734 (5th Cir.1955).

The district court concluded that the defendant renting company, as a corporate entity, constituted a single establishment. In the findings of fact it was determined that the defendant, as a single establishment, had total sales during the relevant period of $890,452.63. Sales of used cars to used car dealers (and therefore for resale) were $116,865, and sales to Government agencies totaled $28,099.01. These two items alone were not sufficient to defeat the exemption. But the charges to the leasing company for gas, tires and repairs were $102,883.28. And transfers of vehicles to the leasing company were $58,012.05. When these four items are totaled, they encompass more than 25% of the defendant's total sales. The court below held

that the inter-company transactions must be treated as part of the defendant rental company's total sales. And since the leasing company was also "selling" to the public, these inter-company transactions must furthermore be treated as sales for resale. The result was that the defendant could not fit itself within the terms of the second test outlined above, and the exemption was defeated.

Appellant urges that the district court erred in this definition and delineation of what constituted the "establishment". It is argued that both the rental company and the leasing company should be viewed as a single establishment for purposes of the Fair Labor Standards Act, and inter-corporate transactions should therefore not be considered as sales for resale.[2]

■ The trial court seemed to base its finding of two separate establishments on the existence of two separate corporations. And some support is found for this position in Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589 (1957). In that case a group of five separate warehouses under common control and ownership were held by the Supreme Court, in a *per curiam* opinion, to be separate establishments for purposes of the Section 13(a) (2) exemption. However, the two cases are factually distinguishable; perhaps the most significant difference being that in the instant case both corporations operate from the same premises and utilize the same employees. It is generally held that the word "establishment" should be construed as it is normally used in business and government. A. H. Phillips Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). And one major criteria is a distinct physical place of business. McComb v. Wyandotte Furniture Co., 169 F.2d 766 (8th Cir. 1948).

2. There is some authority for the proposition that the intercorporate transactions should not be treated as sales for resale even if the two corporations are viewed as separate establishments. This is found in 29 C.F.R. 779.330 (1962). "It should be noted, however, that transfers of goods from one retail or service establishment to another under the same ownership will not be considered as sales for resale." This problem is not reached in view of the disposition of this appeal.

Another factor is whether there is a functional unity. Mitchell v. T. F. Taylor Fertilizer Works, 233 F.2d 284 (5th Cir. 1956). Functionally these two corporations operate as one entity, the sole distinctions between them being their separate corporate existences and the period of time for which vehicles are leased or rented. If there were not two corporate entities there would be no reason for separating the two operations. Indeed, ordinarily the leasing and renting services are combined in one corporate entity— and there is no attempt to separate the two. This was true of both Mitchell v. Pascal System, Inc., 226 F.2d 391 (5th Cir. 1955), and Hollon v. Dixie Drive-it-Yourself System, 154 F.Supp. 413 (M.D. Ala.1957). The difference in corporate structure between the companies in those cases and the defendant and related company in the instant case is a difference in form only.

The relevant factors are clear in the instant case. On the one hand there are two separate corporate entities, with all the implications thereof, i. e., separate records and taxes. On the other hand you have common ownership and control of the two corporations, as well as common officers, mutual use of the business premises, and one set of hourly employees used by both corporations. The district court properly found these facts, but improperly concluded that they result in two separate establishments. Rather, the proper "establishment" in this case is composed of both the renting and leasing companies.

The district court found that the sale of services and transfer of vehicles to the leasing company constituted sales for resale. Such inter-corporate transactions, when placed in the context of a single establishment, cannot be considered sales for resale. And the value of these transactions, when removed from the value of the sale of used cars to used car dealers and the sales to government agencies, reduces the total non-retail sales sufficiently so that it would appear that the defendant brings itself within the terms of the Section 13(a) (2) ex-

emption. Less than 25% of the sales or services are for resale.

But this does not dispose of the case, for the figures with which we have been dealing are the sales and services of the rental company alone. At this point the court is faced with the problem that the district court, in its conclusions of law, found that it was unnecessary to consider whether the combined business of both companies qualifies for the retail exemption. However, the following finding was made concerning the extent of the combined business of the two corporations:

"19. Total combined sales of the defendant and Acme Motor Leasing during 1959 and 1960 (excluding inter-company transactions) were, in round figures, $1,479,596.00. Combined sales of vehicles for resale during the two years were $302,-157.00. Long term leases of five or more vehicles brought in $116,746.65 during the two years. Rental by defendant to United States government agencies brought in $28,099.00. Total income to the two companies from these sources for the two years was $447,003.00 or 32 per cent of total combined sales."

While it is not clear for what reason the court included the income from five or more vehicles in the 32% of total sales, it would seem apparent that this was viewed as income derived from non-retail sales. If such a classification is correct, then it is of no consequence whether the leasing company and rental company are viewed as one establishment, for the combined non-retail sales would be sufficient to defeat the exemption without regard to inter-corporate transactions. This is the position taken by appellee, while the appellant urges that there is no evidence to support treating these long term leases any differently than the other sales.

What is significant about long term leases of five or more vehicles to one customer? It is possible that the district court, as appellee suggests, analogized to the treatment accorded fleet *sales*

of vehicles. The Secretary of Labor has indicated that retail sales shall not include sales at fleet discount to a customer operating five or more automobiles or trucks for business purposes. 29 C.F.R. Sec. 779.397 (1962). Such "fleet sales" encompass two major aspects of wholesale business—volume sales on a discount basis. These same characteristics attach to the *leasing* of five or more vehicles to a single customer. But whether this is a sufficient basis for designating these transactions as non-retail sales is a more difficult question.[3]

■ The statute defines the retail establishment exemption in terms of sales or services which (1) are not for resale and (2) are recognized as retail in the particular industry.[4] It is unquestionable that fleet leasing is a sale or service which is not for resale. But due to the wholesale nature of such a transaction, it is questionable whether it is recognized as retail in the industry. There is no testimony in the record to show that such transactions are not recognized as retail. At the same time, there was little evidence adduced to show that the transactions are recognized as retail. And the burden of proof is on the party seeking refuge in the exemption.[5] The most recent Fifth Circuit case in this area turns on the failure of the employer to meet this burden. Acme Tire and Battery Co., Inc. v. Wirtz, 5th Cir., 330 F.2d 116 (1964).

In attacking the sufficiency of the evidence introduced by the defendant in the instant case, appellee argues that the only testimony offered consisted of statements by persons in business within the industry. However, it is clear that each of the three witnesses offered by the defendant was qualified to state both his personal opinion and the general opinion of persons in the industry as to what was recognized as "retail" within the industry. Although some legislators, in discussing the 1949 amendment to Section 13(a) (2), expressed concern that the amendment would permit each industry to decide for itself whether or not its sales were retail, it was pointed out that the only proper background for defining a retail or service establishment in a particular industry is the understanding of the people dealing in that industry as to what constitutes retail services or sales. Final determination, of course, was left to the administrator and to the courts. 95 Cong.Rec. 12510 (1949) (remarks of Senators Aiken and Holland).

■ The problem inherent in the testimony adduced during the trial of this cause is that it was not directed specifically at the question with which this court is now concerned. The three witnesses produced by the defendant discussed primarily the leasing and renting enterprises as a whole rather than fleet sales of the leasing company.[6] But

---

3. Even the ruling that fleet *sales* are non-retail has been ignored where the evidence showed that the industry regarded the transaction as retail. In Alvin E. Jeter v. International Harvester Co., Civil No. 1444, N.D.Tex., October 9, 1962, the question was specifically put before the jury in the form of a special issue. The jury answered that the sale of motor trucks to operators of five or more vehicles for business purposes was regarded as retail by the industry, and the court held accordingly.

4. The other requirement, i. e., that at least 50% of the sales or services be intrastate, is not in issue.

5. Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Walling v. General Industries

Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947). Goldberg v. Warren G. Kleban Engineering Corp., 303 F.2d 855 (5th Cir. 1962). Gatlin v. Mitchell, 287 F.2d 76 (5th Cir. 1961). Mitchell v. Hunt, 263 F.2d 913 (5th Cir. 1959).

6. The only finding of the trial court concerning the testimony of the expert witnesses was as follows:
   "16. Defendant called Mr. John Lander, Mr. Felton Dorris, and its Vice-President and General Manager Austin as expert witnesses to attempt to establish that all of defendant's business was considered to be retail sales in the automobile and truck leasing industry. Mr. Lander testified that he had never had occasion to discuss or consider whether such rentals were considered retail trans-

the third criteria which must be met in order to fit within the terms of the exemption is that at least 75% of the sales or services must be recognized as retail. This requires an analysis of specific sales and services. The retail concept may be inapplicable to some types of sales and services of an otherwise eligible establishment. It is with this in mind that "fleet leasing" must be specifically analyzed.

Some of the usual distinctions between wholesale and retail activities are set forth by the Secretary in 29 C.F.R. Sec. 779.327 (1962):

"(a) The distinction between a retail sale and a wholesale is one of fact. Typically, retail sales are made to the general consuming public. The sales are numerous and involve small quantities of goods or services. Wholesale establishments usually exclude the general consuming public as a matter of established business policy and confine their sales to other wholesalers, retailers, and industrial or business purchasers in quantities greater than are normally sold to the general consuming public at retail.

\*    \*    \*    \*    \*    \*

"(b) The sale of goods or services in a quantity approximating the quantity involved in a normal wholesale transaction and as to which a special discount from the normal retail price is given, is generally regarded as a wholesale sale in most industries."

Although these regulations are not binding on the courts, they do provide some useful guidelines in examining the status of "fleet leasing". And when these guidelines are applied, the wholesale qualities of fleet leasing are seen to be the same as those which were inherent in fleet sales. While the general consuming public is not excluded from leasing, it is not possible to take advantage of the discount rates without "buying" in volume —leasing a number of vehicles. These elements indicate that such transactions should not be viewed as retail in the industry.

When balancing the wholesale elements of the fleet leasing transactions against the general testimony presented by the defendant, the admonition of the Supreme Court in Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960), should be kept in mind. In discussing the exemption provisions of the Act, the Court said:

"We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit. The three conditions of § 13(a) (2) are explicit prerequisites to exemption, not merely suggested guidelines for judicial determination of the employer's status."

It cannot be said that the evidence introduced by the defendant "plainly and unmistakably" brought the defendant within the terms of the exemption. While it is possible that the retail nature of fleet leasing might have been proved by the defendant,[7] this burden was not met. It

actions in the leasing industry. He testified that in the automobile sales industry they were considered to be retail. Mr. Lander's testimony was in conflict with that of Mr. Austin as to the payment of sales tax on vehicles purchased by the rental industry, and Mr. Lander was under a misapprehension as to whether such sales tax was paid.

"Mr. Dorris testified that, as Manager of Dixie Drive It Yourself System in Atlanta, he considered automobile rentals to be retail. He testified, however, that

Dixie paid overtime compensation to its employees for hours worked in excess of forty. Mr. Austin testified that the Wage and Hour Division made an inspection of Dixie while he was employed there but he did not know the result of the inspection and whether Dixie was found subject to the Wage and Hour law."

7. In the case of Goldberg v. Steepleton General Tire Co., 15 Wage & Hour Cases 582 (W.D.Tenn.1962), the court held specifically that the definitions and classifications of sales by tire dealers

cannot be said that such transactions are clearly viewed as retail within the industry. As a result, the dollar value of the leases of five or more vehicles to one customer must be considered as part of the total retail sales. The total then exceeds the 25% allowable, and the defendant fails to come within the terms of the exemption even though both the rental company and the leasing company are considered to be one establishment.

We believe the district court erred in treating the two companies separately, but reached the correct result, since the right to the exemption is not met in either instance. The judgment is therefore affirmed.

GRIFFIN B. BELL, Circuit Judge (concurring in part and dissenting in part).

Although I concur in the result reached in this matter, I do wish to express my dissent from that portion of the opinion which holds that the District Court erred in failing to treat the two corporations and their business activities as constituting one establishment for the purpose of computing sales and services for resale under the Retail and Service Establishment Exemption from the Act. § 13(a)(2); 29 U.S.C.A. § 213(a)(2).

The corporations were separate entities, maintaining separate books and records. They performed different business functions. One, the appellant corporation, was engaged in over-the-counter short term automobile rentals, while the other was engaged in the long term leasing of vehicles through outside salesmen, and this included fleet leasing to interstate carriers.

Appellant had two places of business. One was its rental office out of which the leasing corporation also operated. It was the only place of business of the leasing corporation, but appellant also operated a repair garage at a different location. Its customers included the leasing corporation as well as the general public. The employees of appellant were subject to working at both locations and two of the four employees involved in this suit did, in fact, work at both locations. Sales made and services rendered by appellant to the leasing corporation were from both locations.

It is true that the corporations had the same stockholders and the same top management but this is an insufficient reason to disregard the corporate entities to the end of treating them as one establishment within the meaning of the Act. The facts do not demonstrate a single physical establishment. Cf. Mitchell v. Gammill, 5 Cir., 1957, 245 F.2d 207. Moreover, there was an absence of functional unity. Cf. Mitchell v. T. F. Taylor Fertilizer, Inc., 5 Cir., 1956, 233 F.2d 284. But even the contrary would not necessarily justify the disregarding of corporate entities. The usual factual situation giving rise to an assertion of the "single establishment" doctrine is where there is one employer. See for example Mitchell v. Bekins Van & Storage Co., 1957, 352 U.S. 1027, 77 S.Ct. 593, 1 L. Ed.2d 589; A. H. Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095.

The argument that the inter-corporate transactions involving gas, tires, repairs and vehicles should not be considered as sales for resale likewise is without merit. Our attention is called to a regulation promulgated by the Secretary which provides that transfers of goods from one retail or service establishment to another under the same ownership will not be considered as sales for resale. 29 C.F.R., § 779.330. We construe ownership as used therein to be ownership by one legal entity, and not ownership through the medium of different corporate entities by common stockholders. To hold otherwise would be again to disregard the corporate entity.

Under the posture of this case appellant simply failed to sustain the claim of an exemption based on the premise of a

---

as published in the C.F.R. were contrary to those recognized in the tire industry— with the latter prevailing. Also see, Al-

vin E. Jeter v. International Harvester Co., n. 3, supra.

single establishment. In short, the charges to the leasing company for gas, tires, repairs and vehicles were sales for resale and defeated the exemption. I would affirm on this ground without reaching the fleet transactions although I do concur in that portion of the opinion.