**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**DISCOUNT AUTO PARTS STORE, INC., and Martin Sharron, Defendants.**

**Civ. A. No. P-2283.**

United States District Court, N. D. Florida, Pensacola Division.

Sept. 30, 1971.

Beverley R. Worrell, Regional Solicitor, and James H. Woodson, Atty., U. S. Dep't of Labor, Atlanta, Ga., for plaintiff.

James E. Hertz and William Fisher, III, Fisher, Hertz & Bell, Pensacola, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARNOW, Chief Judge.

This cause came on for trial before the Court without a jury on September 28 and 29, 1971. The Court having heard and considered the testimony, stipulations, exhibits and all the admissible evidence, the arguments of counsel and being fully advised now makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. In this action the Secretary of Labor seeks an injunction to preclude further violations of the minimum wage, overtime and recordkeeping provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201, et seq.), hereinafter referred to as the Act, including the restraint of withholding of minimum wages and overtime compensation due certain of defendants' employees.

2. Defendant, Discount Auto Parts Stores, Inc., is a corporation having a place of business and doing business at 604 North Pace Boulevard, Pensacola, Escambia County, Florida, where it is, and at all times pertinent hereto was, engaged in the distribution and sale of automotive parts and accessories.

3. Defendant, Martin Sharron, resides in Pensacola, Escambia County, Florida, and at all times pertinent hereto is and has been general manager of Discount Auto Parts Stores, Inc., at its aforesaid Pensacola establishment, and in such capacity has actively managed, supervised and directed the business affairs of said corporation in relation to its employees.

4. Throughout the period since September 7, 1968, defendants' employees all have regularly received goods and supplies at the Pensacola, Florida, place of business arriving from points outside of Florida, and they have regularly packaged and shipped returned goods to suppliers outside of Florida.

5. Defendants did not maintain a record of the hours worked by their employees during the period from September 14, 1968, through May 29, 1970.

6. Throughout the period prior to May 29, 1970, defendants' aforesaid establishment in Pensacola, Florida had an annual dollar volume of sales which was less then $250,000. Defendant Sharron testified that he estimated that five to ten percent of the sales of the establishment were exempt from the Florida retail sales tax and that over half of the sales were made within the State of Florida. He testified that in addition to these, there were certain other transactions included in the cash register receipts of the establishment which were payments by other out-of-state auto parts dealers for auto parts which the corporate defendant had purchased from supliers in a volume in excess of its individual needs in order to obtain more favorable prices for volume purchases. Amounts of such goods in excess of the requirements of defendants' business were then picked up by the other out-of-state auto parts dealers at defendants' establishment who reimbursed the corporate defendant for them at cost. Defendants argued that these transactions should not be considered as sales. However, Mr. Sharron testified that the corporate defendant alone contracted with the suppliers for such goods and was billed for them by the suppliers. Mr. Sharron stated that defendants had no records reflecting the volume of such transactions and that he could not estimate the volume thereof.

7. Defendants paid their employees straight salaries for all hours worked and made no attempt to pay them time and one-half for hours worked in excess of forty per week.

8. Defendants' employee Elzie Sims had the primary duty of management, being the assistant general manager of defendants' auto parts establishment. He customarily and regularly directed the work of two or more other employees, had authority to hire and fire, and spent the majority of his time in management of the enterprise, although he also spent some of his time in making sales and performing other work of the same nature as that performed by the employees under his supervision.

9. The parties have stipulated that the employees listed below and in Findings of Fact Nos. 10 through 11 were employed by the corporate defendant during the periods and at the weekly salaries set opposite their names. The hours worked of the employees listed below this Finding of Fact are based on the testimony of defendant Sharron:

| Name | Period (Workweeks ending) | Average Weekly Hours | Salary | Minimum Wage Due | Overtime Premium Due |
|---|---|---|---|---|---|
| John W. Burgett | | | | | |
| | 4/7–5/1/70 & 5/22–5/29/70 (6 weeks) | 49 | 100.00 | None | |
| | 5/8–5/15/70 (2 weeks) | 49 | 83.32 | None | 70.52 |
| Median date: 5/1/70 | | | | Total | $ 70.52 |
| Elzie A. Sims | 1/24–3/28/69 (10 weeks) | 49 | 120.00 | None | |
| | 4/4/69–2/13/70 (46 weeks) | 49 | 145.00 | | 723.04 |
| Median date: 8/1/69 | | | | Total | $ 723.04 |
| James Johnson, Jr. | | | | | |
| | 11/21/69 | 49 | 75.00 | 3.40 | 7.20 |
| Median date 11/21/69 | | | | Total | 10.60 |
| William David Gregg | | | | | |
| | 10/18/68– 1/3/69 (12 wks) | 49 | 80.00 | None | 88.32 |
| Median date 11/22/68 | | | | Total | 88.32 |
| George L. Simpson | | | | | |
| | 5/15/70 | 49 | 85.00 | None | 7.82 |
| Median date 5/15/70 | | | | Total | 7.82 |

| Name | Period (Workweeks ending) | Average Weekly Hours | Salary | Minimum Wage Due | Overtime Premium Due |
|---|---|---|---|---|---|
| Patrick Jefferson Pate III | | | | | |
| | 3/27/70– 4/3/70 | 49 | 75.00 | 6.80 | 14.40 |
| Median date 3/27/70 | | | | | Total  21.20 |
| Ronnie Sims | | | | | |
| | 9/14/68– 10/3/68 (3 wks) | 49 | 100.00 | None | $ 266.80 |
| | 10/12/68 | 49 | 83.34 | — | |
| | 10/17/68 | 49 | 100.00 | — | |
| | 11/8/68– 1/3/69 (9 wks) | 49 | 100.00 | — | |
| | 1/30–2/6/70 (2 wks) | 49 | 70.00 | — | |
| | 2/13–3/13/70 (5 wks) | 49 | 100.00 | — | |
| | 3/20/70 | 49 | 115.00 | — | |
| | 3/27/70 | 49 | 100.00 | — | |
| | 4/3/70 | 49 | 115.00 | — | |
| | 4/10–5/29/70 | 49 | 125.00 | — | |
| Median date 6/12/69 | | | | | Total $ 266.80 |

10. The hours worked by the following named employees of defendants are based on the testimony of said employees as found by the Court to be credible:

| Name | Period (Workweeks ending) | Average Weekly Hours | Salary | Minimum Wages Due | Overtime Premium Due |
|---|---|---|---|---|---|
| Regina Miller | 4/18/69–6/18/69 | Alternating weeks of 47 and 48 hours except last week of 40 hours | $60.00 (except last week $50) | $158.80 | 54.40 |
| Median date 5/18/69 | | | | Total | $ 213.20 |
| Lynn Bryan Paul | 3/27/69–4/17/69 | 18, 54, 55 & 54 | $23.34 1st week $70.00 thereafter | 56.26 | 34.40 |
| Median date 4/5/70 | | | | Total | $  90.66 |
| Jerry Preston Thomas | 11/14/69–3/13/70 | 57 except 47 on 1/30/70 | $80.00 to 12/19/69 then $85.00 to 2/20/70 then $90.00 to 3/13/70 except $71.00 on 1/30/70 | None | $ 356.40 |
| Median date 1/15/70 | | | | Total | $ 356.40 |
| Stanley R. Smith | 10/18/68– 3/13/70 | 54 except 61 four weeks in 1969 at $95 and 36 on 10/18/69 5/23/69 and 6/27/69 | $80 to 1/10/69 except $53.32 on 10/18/68, $85 from 1/17/69 to 5/2/69 then $90 to 7/11/69 except $75 on 5/16, $60 on 5/23 and 6/27, $95 from 7/18/69 to 9/12/69, $100 from 9/19/69 to 12/12/69 except 10/31, $105 from 12/19/69 to 3/6/70 | $114.18 | 848.45 |
| Median date 6/20/69 | | | | Total | $ 962.63 |

11. Allen Dickens was employed by defendants as a handyman and truck driver. The Court credits the testimony of defendant Sharron that during the period when Dickens was paid $40.00 per week he worked an average of four days of five hours each for an average pay of $2.00 per hour for twenty hours and concludes in the absence of records of the employee's hours that this rate continued so that when the employee was paid $50 per week he worked an average of twenty-five hours and when paid $60 per week he worked an average of thirty hours. The Court credits the testimony of Sharron that Dickens made only nine trips driving a truck from Pensacola to Memphis, Tennessee and return during the period since September 14, 1968, but credits the testimony of Dickens regarding the length of time involved in each trip, which added twenty-five hours working time to his normal work week, for which he was paid an additional $20.00. Thus Dickens is due additional minimum wages in the weeks of his trips to Memphis as follows:

| Date | Hours | Reg. Pay | Trip Pay | Minimum Wages Due |
|------|-------|----------|----------|-------------------|
| 5/2/69 | 50 | $ 50.00 | $ 20.00 | $ 10.00 |
| 7/18/69 | 45 | 40.00 | 20.00 | 12.00 |
| 8/22/69 | 50 | 50.00 | 20.00 | 10.00 |
| 9/12/69 | 50 | 50.00 | 20.00 | 10.00 |
| 9/19/69 | 50 | 50.00 | 20.00 | 10.00 |
| 11/7/69 | 50 | 50.00 | 20.00 | 10.00 |
| 11/21/69 | 50 | 50.00 | 20.00 | 10.00 |
| 1/23/70 | 50 | 50.00 | 20.00 | 10.00 |
| 2/6/70 | 50 | 50.00 | 20.00 | 10.00 |
| | | | Total | $ 92.00 |

Median Date     9/12/69

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter and the parties of this action.

2. Martin Sharron is and has been at all times pertinent hereto an employer of the employees of the corporate defendant within the meaning of the Act.

3. Throughout the period since September 7, 1968, defendants' employees have regularly engaged in commerce and in the production of goods for commerce within the meaning of the Act.

4. Defendants repeatedly have violated the minimum wage provisions of sections 6 and 15(a) (2) of the Act, during the period from September 14, 1968 to May 29, 1970.

5. Defendants repeatedly have violated the overtime provisions of sections 7 and 15(a) (2) of the Act, during the period from September 14, 1968 to May 29, 1970.

6. Defendants repeatedly have violated the recordkeeping provisions of sections 11(c) and 15(a) (5) of the Act and the regulations issued pursuant thereto, during the period from September 14, 1968 to May 29, 1970.

7. Defendants have asserted as an affirmative defense the retail exemption under section 13(a) (2) of the Act. Defendants failed to carry their burden of proving this defense inasmuch as they failed to prove that their establishment came within the definition of a "retail or service establishment", having as much as 75% of its annual dollar volume of sales being not for resale and recognized as retail sales in its industry. Defendants presented no analysis of their sales and did not account for the estimated five to ten percent of their sales which were exempt from the state retail sales tax, nor did they present their state

sales tax returns. Also the Court concludes that the transactions between defendants and other auto parts dealers described in Finding of Fact No. 6 were sales of defendant within the meaning of section 3(k) of the Act. See Acme Car & Truck Rentals, Inc. v. Hooper, 331 F. 2d 442 (C.A.5 1964); Northwestern-Hanna Fuel Co. v. McComb, 166 F.2d 932 (C.A.8 1948), and it is reasonable to infer that such sales were wholesale transactions or sales for resale.

■ 8. Defendants have asserted as an affirmative defense the executive exemption under section 13(a) (1) of the Act as to employee Elzie Sims. Having found that defendants failed to prove that the employee was employed by a "retail or service establishment" it was necessary under the regulations applicable to this exemption found in 29 CFR 541.1 subsection (e) for defendants to prove that the employee did not devote more than 20% of his time to non-supervisory duties, which burden they failed to carry.

■ 9. The injunction against future violations prayed for by plaintiff will be denied inasmuch as the record before the Court reveals that defendants commenced recording the hours of their employees and paying rates of at least the minimum wage with premium pay for overtime shortly after the Wage-Hour compliance officer completed his investigation and explained to Mr. Sharron how the Act applied to the defendants' business. There was no proof presented of violations subsequent to the investigation.

■ 10. Plaintiff is entitled to judgment enjoining and restraining defendants from withholding from their employees the amounts of minimum wages and overtime compensation found due them totaling $2,903.19 in Finding of Fact Nos. 9 through 11, together with interest thereon from the median dates of their employment in violation of the Act with costs taxed against defendants.