F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

SUNDIAL ASSOCIATES, LTD., et al., Defendants-Appellees.

No. 76–4171.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1979.

---

Carin Ann Clauss, Sol. of Labor, U. S. Dept. of Labor, Jacob I. Karro, Atty., Washington, D. C., Bobbye D. Spears, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., Joseph M. Woodward, Atty., U. S. Dept. of Labor, Carl W. Gerig, Jr., Assoc. Sol., Washington, D. C., for plaintiff-appellant.

Richard M. Vogel, Naples, Fla., Gerald Deller, Fort Myers, Fla., for defendants-appellees.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

The Secretary of Labor brought suit against appellees to enforce minimum wage, overtime and record keeping requirements of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (FLSA). While conceding that many of their employees were covered by the FLSA, appellees claimed that some were exempt from the Act's overtime requirements by virtue of 29 U.S.C. § 213(b)(8), relating to hotel workers. The district court granted partial injunctive relief but agreed with appellees as to the § 213(b)(8) exemption and refused to order back overtime pay. The Secretary has appealed.

The business in question is a condominium development called Sundial of Sanibel Island (the Sundial Project). The condominiums have been built and sold by Sundial Associates, Ltd. (SAL), a limited partnership. In addition to condominium sales, SAL provides maintenance for the project (by contract with a nonprofit corporation consisting of all condominium owners) and owns additional facilities, including offices, a central lobby and switchboard, and recreational facilities.

Purchasers of condominiums are entitled to become limited partners in Sundial Rental Partners, Ltd. (SRP). SRP rents individual apartments for short periods while not

in use by the owners. SRP is managed by SAL, which is its only general partner. SRP also is involved in recreational activities at the Project and leases facilities from SAL. The district court accepted appellees' contention that SRP's operations qualify it as a hotel within the scope of § 213(b)(8) despite its physical integration with the rest of the Project. We hold this interpretation of § 213(b)(8) erroneous and reverse.

29 U.S.C. § 213(b) has provided a limited exemption[1] from the overtime provisions of § 207 for employees "employed by an establishment which is a hotel, motel or restaurant." The district judge held that SRP constituted such an establishment and hence was entitled to the benefit of § 213(b)(8). The Secretary challenges that holding, maintaining that SRP and SAL constitute a single establishment and that SRP/SAL does not qualify as an "establishment which is a hotel." Our first question, then, is whether SRP was properly considered a separate "establishment."

The word "establishment" is used in several places in the Act but is nowhere explicitly defined. Nevertheless, both case law and explicit regulations dictate that here the entire Sundial Project is a single establishment. SRP is a separate legal entity and may carry out a distinct function, but it is not a separate establishment.

▮▮▮ In approaching this question we are mindful of the Supreme Court's instruction that "Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed." *A. H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095, 1099 (1945). An employer seeking exemption from the Act's coverage must bear the burden of showing that his business meets the exemption's requirements. *See Idaho Sheet Metal*

*Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694, 704 (1966); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 393, 80 S.Ct. 453, 456, 4 L.Ed.2d 393, 397 (1960). Specifically, the Court has held that "Congress used the word 'establishment' as it is normally used in business and in government—as meaning a distinct physical place of business." *A. H. Phillips, Inc., supra*, 324 U.S. at 496, 65 S.Ct. at 810, 89 L.Ed. at 1100. That case dealt with the somewhat easier proposition that a chain of grocery stores and its central warehouse was not a single establishment. Subsequent cases, however, have dealt with situations closely analogous to this one. In two cases we have held that a company that constructs a building to be used partly for its own offices and partly as rental space cannot claim that the rental property is an establishment separate from its own business housed in the same building. *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1144 (CA5, 1970); *Wirtz v. Savannah Bank & Trust Co.*, 362 F.2d 857 (CA5, 1966). We have also held that two separate (but commonly controlled) corporations engaged respectively in automobile rentals and longterm leasing at the same premises constituted a single establishment. *Acme Car & Truck Rentals, Inc. v. Hooper*, 331 F.2d 442 (CA5, 1964). These cases have made clear that when a part of a business complex seeks exemption as a separate establishment it must at least show that it has a physically separate place of business.

Although these cases were decided under different sections of the Act we see no reason to give a different interpretation to the word "establishment" as used in § 213(b)(8). When that section was added in 1966 its drafters were presumably aware of the technical meaning of "establishment" being developed in FLSA cases. The use in

---

1. Prior to 1974 the exemption from the maximum hour law was total. Effective May 1, 1974, the weekly maximum number of non-overtime hours for hotel and restaurant workers was 48. This number was reduced to 46 effective May 1, 1974. P.L. 93–259, §§ 13(a), 13(b), 88 Stat. 55. For hotel employees performing maid or custodial services the maximum was reduced to 44 effective May 1, 1976,

and to 40 effective May 1, 1977. P.L. 93–259, §§ 13(c), 13(d). For other hotel employees the maximum was reduced to 44 on January 1, 1978. Effective January 1, 1979, 29 U.S.C. § 213(b)(8) is repealed altogether, and all hotel and restaurant employees are subject to the 40-hour maximum. P.L. 95–151, § 14, 91 Stat. 1245, 1252.

§ 213(b)(8) of the conspicuously awkward phrase "establishment which is a hotel" in place of "hotel" could hardly have been unintentional. We believe that it indicates an express desire to limit that section's application to distinct physical establishments that qualify as hotels.

Regulations promulgated by the Secretary of Labor also support this view. 29 C.F.R. § 779.23 states generally that an establishment is a "distinct physical place of business." A subsequent section deals at greater length with the situation at hand:

. . . two or more physically separated portions of a business though located on the same premises, and even under the same roof in some circumstances may constitute more than one establishment for purposes of exemptions. In order to effect such a result physical separation is a prerequisite. In addition, the physically separated portions of the business also must be engaged in operations which are functionally separated from each other.

29 C.F.R. § 779.305. These regulations are applicable to exemptions under § 213(b)(8),[2] and should be afforded substantial weight. *See Idaho Sheet Metal Works, supra,* 383 U.S. at 205, 86 S.Ct. at 746, 15 L.Ed.2d at 703.

When the proper legal standard is applied to this case it is clear that SRP cannot qualify as a separate establishment. While SRP may function similarly to a hotel, such hotel is completely physically intertwined with a condominium complex. The list of apartments that constitute the hotel varies from month to month, and at any given time a "hotel room" may be surrounded by apartments. Such a situation involves far greater physical integration of the two businesses than was the case in *Savannah Bank & Trust Co.* or *Montalvo,* where we found that businesses occupying separate and permanent floors of one building could not qualify as separate establishments. SRP may be a hotel for many purposes, but it is not a hotel establishment for purposes of the FLSA exemption.

■ In reaching this conclusion we do not differ with the district court's findings of fact with regard to the separate business identities, bookkeeping and payrolls of SRP and SAL. In some circumstances these will be relevant factors in determining the extent of an "establishment." *See Acme Car & Truck Rentals, Inc., supra,* 331 F.2d at 444. But they only become significant once the employer has shown that a distinct physical establishment exists. SRP has failed to do so here.

There remains the question of whether the Sundial Project, as a single establishment, may qualify under the hotel exemption. Here again regulations promulgated by the Secretary of Labor provide guidance. 29 C.F.R. § 779.383(b) states generally that "[t]he term 'hotel' as used in section 13(b)(8) means an establishment known to the public as a hotel, which is primarily engaged in providing lodging or lodging and meals for the general public." The section goes on to indicate that an establishment will be deemed to be "primarily engaged" in hotel activities when it receives more than half of its income from such activities. The Project may be known to many for providing lodging for the public, but the record clearly shows that this is not its primary activity. The two business entities comprising the Project are involved in many operations. They construct and sell condominiums, provide maintenance of the grounds, rent vacant apartments for short terms, and provide recreational facilities. As the income figures for SAL and SRP make clear,[3]

---

**2.** The district court erroneously concluded that §§ 779.23 and 779.305 applied only to the "retail establishment" exemption under § 213(a)(2), and not to the § 213(b)(8) hotel exemption. However, § 779.23 discusses the meaning of establishment "[a]s used in the Act," and presumably applies to all such uses. Section 779.305, moreover, appears in a group of regulations (29 C.F.R. §§ 779.302–779.311) that are explicitly to be applied to a number of exemptions including § 213(b)(8), 29 C.F.R. § 779.302.

**3.** The district judge's findings of fact indicate that SRP's revenues in 1973, 1974 and 1975 were $46,229, $363,403, and $1,134,268 respectively. SAL had revenues of $2,706,992 in 1973 and $6,576,085 in 1974. Of these amounts $2,395,800 in 1973 and $5,831,674 in 1974 were from condominium sales. No figures were given for SAL for 1975.

the great bulk of the income received by the Project has been from the sale of condominiums. Whether or not we follow the regulations' use of a 50% of income test, it is clear that the Sundial Project is not primarily engaged in hotel activities.

The Secretary's brief also contends in a footnote that SRP paid its employees less than the applicable minimum wage during 1976. We are not clear whether this question was before the district court, and it can be appropriately dealt with by that court on remand.

REVERSED and REMANDED.