James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

T. F. TAYLOR FERTILIZER WORKS, Inc., Appellee.

No. 15802.

United States Court of Appeals
Fifth Circuit.

May 8, 1956.

Beverley R. Worrell, Regional Atty., U. S. D. of L., Birmingham, Ala., Bessie Margolin, Asst. Solicitor, U. S. D. of L., Washington, D. C., Stuart Rothman, Solicitor, Sylvia S. Ellison, Eugene R. Jackson, Attorneys, United States Department of Labor, Washington, D. C., for appellant.

Waldo DeLoache, Moultrie, Ga., Moore, Gibson, DeLoache & Gardner, Moultrie, Ga., of counsel, for appellee.

Milton A. Carlton, Moultrie, Ga., Price, Spivey & Carlton, Swainsboro, Ga., of counsel, for Millen Fertilizer Co., amici curiæ.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

The sole issue on this appeal is whether the appellee's fertilizer dry mixing plant and office are exempted from the Fair Labor Standards Act as a retail establishment by Section 13 of the Act, 29 U.S.C.A. § 213. At pre-trial conference, the company conceded that it had not complied with the overtime provisions of the statute, § 207, and that if it was not entitled to an exemption under § 213(a) (4), it would have no defense to the Secretary's suit for injunctive relief; the Secretary conceded that all the percentage requirements for exemption under § 213(a) (4) were met by the defendant. The trial issues were therefore limited to whether the company's plant and office constitute one "establishment," within the meaning of the Act, whether it "is recognized as a retail establishment in the particular industry", and whether its sales are "recognized as retail sales or services in the particular industry." 29 U.S.C.A. § 213(a) (2), (a) (4). The trial court, sitting without a jury, resolved all three issues in the defendant's favor. On appeal, the Secretary specifies error in each of these findings of fact.

The facts relative to the appellee's business are not disputed. The company is one of the enterprises of T. F. Taylor, and rents one of his three tobacco warehouses for use as a fertilizer dry mixing plant throughout the year except during the tobacco season, which lasts for about six weeks in July and August. The factory is known in the fertilizer industry as a "dry mixing plant," as opposed to a "complete plant," because the operation is limited to mixing previously manufactured chemicals. The term "dry mixing" is a holdover from the time when all the ingredients were dry, and is still used although some chemicals, such as a certain nitrogen solution, are now shipped in liquid form. A "complete plant", on the other hand, may make sulphuric acid, and perhaps other ingredients as well.

The appellee's dry mixing plant and tobacco warehouse is situated in the industrial section of Moultrie, Georgia, but about half the orders are taken in an office five blocks away, in the business district. In the office, which also serves Taylor's real estate and retail oil businesses, all records are maintained, all orders are turned in, and all invoices and dray bills are written up. The deliveries are made exclusively from the plant, however. All sales are made direct to farmers for farm use, there being no intermediary dealers or agents, except traveling salesmen employed on a salary basis.

The Secretary contends first that the plant and office are separate establishments, so that because, presumably, all sales are made initially either on the road or in the office, and are approved in the office, the plant cannot qualify as a retail establishment because it makes no sales. The argument relies both on the legislative history of the 1949 amendments to § 213 and on court decisions before and after the amendments to show that an "establishment" is not a business; and this much being demonstrated, the Secretary concludes that each physically separate unit of a business is an establishment. However, the suggestion that the right to an exemption depends upon such factors as whether part of the business is separated by a partition, or is conducted in an adjoining

building, or in a building across the street or five blocks away, does not recommend itself as a rational distinction; furthermore, it does not appear to have been the intent of Congress. The House Managers, in their statement on the proposed bill, had the following to say of the exemption as applied to physically separate warehouses:

> "Since, however, the exemption does apply to any employee employed 'by' an exempt retail or service establishment, it is applicable to employees of an exempt retail or service establishment working in a warehouse operated by and servicing such establishment exclusively, whether or not the warehouse operation is conducted in the same building as the selling or servicing activities" U.S.Code Congressional Service 1949, p. 2265.

Indeed, as the Secretary suggests at one point in his brief, the distinction turns on functional as well as geographical separation. The functional difference was deemed an important factor in Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, where the company's warehouse and central office servicing its chain of 49 retail grocery stores was held to be a separate establishment. The Court pointed out that chain store organizations are "of a hybrid, retail-wholesale nature" and in the wholesaling aspects of their operation should not gain "a competitive advantage in labor costs over independent wholesalers." 324 U.S. 490, 495, 498, 65 S.Ct. 807, 809.

The Secretary asserts that the same functional difference is present here (manufacturing and sales), but, so interpreted, a functional difference would exist in any business which maintains an office separate from its place of warehousing or processing. To the contrary, the functional difference noted in the Phillips case was that existent in the various aspects of a "hybrid" business, not in the ordinary distinction which exists in many businesses between the clerical staff and the warehouse or plant employees.

This was recognized in Walling v. Goldblatt Bros., 7 Cir., 152 F.2d 475 and Bogash v. Baltimore Cigarette Service, 4 Cir., 193 F.2d 291. In Goldblatt, the fact that the warehouse in question was across the alley from the retail store it serviced was held to be without significance, and in Bogash, a company which maintained cigarette vending machines in various places of business was held exempt in all of its operations, even though its warehouse was separate from its central office. The Fourth Circuit stated in the latter case that while a chain store system may be separated into its wholesale and retail aspects, "this procedure may not be carried so far by the courts as to divide a genuinely retail business into separate parts." 193 F.2d 291, 294.

Thus, the first question in a case such as this is whether a business is retail, in whole or in part, and if it is of a hybrid character, which of its aspects are retail and which are not. If parts of it are not, it would not matter for the purposes of coverage that they are conducted behind a partition or even in the same room, provided that they are truly separable from the retail branch of the enterprise. On the other hand, if the business is not of a hybrid character, then it is of no consequence that the office exists apart from the rest of the operation.

■ We think that the trial court did not err in finding the plant and office in this case to be a single establishment, they being functionally an entity, and that the company is therefore a manufacturer or a retailer in all of its aspects. As in the Bogash case, its salesmen sell on the road, or in the office, a product there warehoused, and here processed, in a separate building. If it is basically a manufacturer, its administrative employees and salesmen would be exempt from the Act not because the office in which they work is a separate retail establishment, but because they are exempted under § 213(a)(1) on account of being "employed in a bona fide executive,

administrative, professional, or local retailing capacity, or in the capacity of outside salesman."

Since the business is functionally an entity, although composed of separate physical units, and is therefore a single establishment, the question arises whether it is a retail establishment within the meaning of the Act. The appellee asserts that its employees are exempted from the statute by virtue of § 213(a) (4):

"§ 213. Exemptions

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: Provided, That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located".

Section 213(a) (2) exempts:

"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry".

In this case, it is agreed that the three percentage requirements are met by the appellee, so that it is exempted from the Act if its sales are recognized as retail sales in the fertilizer industry, and if it is recognized as a retail establishment in the fertilizer industry. On these two questions the major part of the proof was adduced below.

The Secretary offered documentary evidence and expert testimony that neither the fertilizer works nor its sales are retail or are considered retail in the industry. Thus it was shown that the fertilizer mixing business is classified as manufacturing in the Standard Industrial Classification Manual, the Census of Manufacturers, the Directory of Georgia manufacturers, the chemical Fertilizer Year Book, Manufacturers of Georgia, a Farm Credit Administration circular, and numerous other publications; likewise, the sales of fertilizer to farmers are classified as wholesale sales in the Census of Business and in a Farm Credit Administration circular. The Secretary's expert, Professor Beckman of Ohio State, testified that the defendant's business is manufacturing, because for census and other purposes manufacturing is defined as the transformation of organic or inorganic substances into new products. Secondly, he testified that sales of fertilizer to farmers are not retail sales where the fertilizer is purchased for farm rather than personal or household use.

The appellee offered testimony by those experienced in the fertilizer industry that while a complete plant is recognized in the industry as manufacturing, because it makes its own ingredients, a dry mixing plant is not, apparently because of the relative simplicity of the operation. These witnesses also stated that sales of fertilizer are regarded as retail sales when they are made direct to farmers. It was stipulated that the testimony of certain other members of the industry would be cumulative on these issues.

■ With regard to the sales, the Secretary contends that the appellee's evidence could not be accepted because its witnesses regarded all sales not for resale as retail sales, whereas this factor is already included in the percentage requirements of § 213(a) (2). The inclusion of this factor in the percentage test, however, would not necessarily exclude it from the consideration of what

may be recognized as a retail sale in the industry. Moreover, the legislative history is plain that Professor Beckman's definition of a retail sale—a sale for household or personal use—was precisely the concept which was rejected by Congress in amending the Section. Boisseau v. Mitchell, 5 Cir., 218 F.2d 734. In presenting the bill, the House Managers stated:

> "The third test provides that 75 percent of the establishment's annual dollar volume of sales of goods or services (or of both) must be recognized in the particular industry as retail sales or services. Under this test any sale or service, regardless of the type of customer, will have to be treated by the Administrator and courts as a retail sale or service, so long as such sale or service is recognized in the particular industry as a retail sale or service. Thus, the sale by a farm implement dealer of farm machinery to a farmer will be retail if the sale is recognized as retail in such industry." U. S. Code Congressional Service, p. 2264.

As noted by the trial court, Professor Beckman's definition may be valid for census and other purposes, but if not recognized in the fertilizer industry can have no bearing on the appellee's right to an exemption.

The Secretary's agument with regard to the appellee's business is essentially that because it carries on manufacturing activities, the fact that industry members, who must be regarded as biased, consider it to be retail is of little weight. However, it is admitted that "ice plants which manufacture the ice they sell" were regarded by Congress as typical exemptions under § 213(a) (4). 95 Cong.Rec. 14932. Thus the testimony of the industry members on this point cannot be brushed aside as wholly without foundation; moreover, Professor Beck-man's thinking, which would exclude all manufacturing from the retailing exemption, and which defines manufacturing as the transformation of organic or inorganic substances into new products, would probably also exclude the ice plant, which Congress thought to be typically exempt.

We believe that the company here amply sustained its burden of proving that its business and its sales are recognized as retail in the fertilizer industry. Industry members were unanimous in their opinions on the question, and offered a reasonable basis for their distinctions, which cannot be arbitrarily rejected because they were interested witnesses. The Secretary's evidence was for the most part based on the classification of the fertilizer industry for census and other purposes, made by general standards adopted for use in classifying all business. Thus Professor Beckman, while an expert in matters relative to the census of wholesaling, did not profess any personal knowledge of the fertilizer industry. He had never been in a fertilizer plant. He did not believe such knowledge to be relevant to the issue, stating, "I don't think it's pertinent and I wouldn't even go across the street to accomplish that purpose." (Acquiring any knowledge about the industry.) The expert believed the matter governed by general definitions, which, if Congress had so intended, could have been placed in the Act itself. The fact that Congress referred the matter to industry recognition indicates that it intended a more flexible rule, adaptable to the many various branches of industry. In the determination of what is recognized as retail in an industry, the opinion of industry members would be relevant, and the trial court did not err in basing its findings of fact upon their testimony.

The judgment is

Affirmed.