James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

Boyd GAMMILL, Appellee.

No. 16383.

United States Court of Appeals Fifth Circuit.

May 29, 1957.

Sylvia S. Ellison, Atty., Dept. of Labor, Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D. C., Earl Street, Reg. Atty., Dept. of Labor, Dallas, Tex., Stuart Rothman, Solicitor, Lawrence P. Hochberg, Atty., U. S. Dept. of Labor, Washington, D. C., for appellant.

Malcolm E. Lafargue, Shreveport, La., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Boyd Gammill, who was the defendant in the district court and is the appellee here, operated a place of business in Shreveport, Louisiana, under the name of Cotton Boll Market. The business consisted of a market for the sale of groceries, meats, poultry, produce and other foodstuffs, a barbecue stand, a restaurant, a liquor store and bar, and a poultry processing department. The Secretary of Labor brought suit under the authorization of Section 16(c) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(c), against Gammill on behalf of six of the employees of his poultry department for minimum wages and overtime pay for varying periods between July 1, 1951, and March 31, 1953. Gammill interposed three defenses: that his business was a retail establishment and exempt under Section 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2); that the six employees were excluded from coverage by Section 13(a) (4) of the Act, 29 U.S.C.A. § 213(a) (4); and that he was not, in the operation of his business, engaged in interstate commerce.

The pertinent provisions of the Fair Labor Standards Act, Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by the Fair Labor Standards Amendments of 1949, c. 736, 63 Stat. 910, 29 U.S.C.A. 201 et seq., are as follows:

"Exemptions

"Sec. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to * * *

"(2) any employee employed by any retail or service establishment,

more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *

"or (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: Provided, That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; * * * " 29 U.S.C.A. § 213(a) (2), § 213(a) (4).

By stipulation and affidavits it was established that at the times here material the business of Gammill was operated upon property owned by him at 2434 Southern Avenue in Shreveport. It consisted of one large building, a smaller building and a paved parking area. The grocery and market, the restaurant, the liquor store and the cocktail lounge were in the front of the larger structure. The poultry processing was done in the rear of this building. The smaller building was occupied by the barbecue stand. The business conducted by Gammill at the Cotton Boll Center was under the supervision of Arvel Ellard as General Manager. He had charge of all purchases and sales, the bookkeeping, was responsible for the money, signed the checks, hired and fired employees including those in charge of the various departments. Each of the departments, namely, the barbecue stand, the restaurant, the liquor store, the bar, the grocery and market and the poultry department, had a department head who was not concerned with any of the other departments. A single bookkeeping system was kept but it reflected the operations of each department separately as well as the business as a whole. As a rule employees in the poultry department did not work in other departments. One employee, not here involved, divided his time between the grocery and the poultry departments, for a period of four months.

In the grocery and market foodstuffs were sold to the public. The restaurant and barbeque stand sold cooked foods to the consuming public. The bar and liquor store sold alcoholic beverages to the public. In the poultry department eggs and live poultry were purchased and received. The eggs were candled and stored until sold. Poultry was weighed, killed, dressed and stored until sold or used. Some of the dressed poultry was cooked and served at the restaurant and barbecue stand. Some was sold at the grocery and market. Occasional quantity sales of dressed chickens were made to individuals for consumption at large parties. The majority of the sales of the poultry department was made to hotels and restaurants. During the period of July 1, 1951, to June 30, 1953, the poultry purchases amounted to over $300,000. Of these there were about $10,000 of purchases made on the premises from out-of-state dealers, and about $11,000 of purchases made outside of Louisiana by truck drivers of Gammill at times when local supplies were inadequate. Thus about seven per cent. of the poultry purchases might be said to be in interstate commerce. By the stipulation the parties agreed that:

"Of the gross income received by defendant [Gammill] from the Cotton Boll Center operated by him in said building during the period noted above, including the poultry department, in excess of 75 per cent. was received from sales retail in nature. With reference to the poultry department alone in excess of 25 per cent. of gross income was

received from sales for resale. All sales were made in the State of Louisiana.

"If the grocery store, meat market and the poultry department are considered a unit and segregated from the other departments above named, then in excess of 25 per cent. of gross sales were obtained from sales for resale."

Gammill, asserting that his operation was a "corner grocery" or "department store" and a single establishment in which over 75 per cent. of his business was at retail and intrastate, claimed exemption from the burdens of the Act and moved for a summary judgment. The Government contended that the business of Gammill was of a hybrid character, that the poultry department was a separate unit not functionally related to the other departments, and that it was a wholesale enterprise subject to the wage and hour provisions of the Fair Labor Standards Act. The Court found the poultry department to be merely a part of a single establishment and that the entire business was exempt from the Act. A summary judgment was entered for Gammill. The Secretary of Labor has appealed, presenting for our review the question decided against him by the district court.

We are not called upon to give independent consideration to the nature of the operations performed in the poultry department; it is admitted that if this section is held to be a separate business it is not a retail establishment. Rather, the sole question presented for our determination is whether the district judge erred in his determination as to what, considering the facts before him "in the light of experience and common knowledge", was included in Gammill's business unit. Boisseau v. Mitchell, 5 Cir., 1955, 218 F.2d 734.

A decision involving statutory application should always seek to give effect to the expressed will of Congress. See Walling v. American Stores Co., 3 Cir., 1943, 133 F.2d 840. In A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 808, 89 L.Ed. 1095, 157 A.L.R. 876, it is pointed out that "any exception from such humanitarian and remedial legislation [as the Fair Labor Standards Act] must * * * be narrowly construed." Judicial construction should not broaden the stated exceptions to cover businesses which Congress did not intend to include. Common ownership of a non-retail business and of a retail business will not bring the former business within the retailer's exemption. The question which is asked in such a situation is whether the two businesses, although proprietarily united and perhaps functionally related, as in the Phillips case, are none the less functionally distinct. If they are, each must independently qualify or come under the Act. The company operating a chain of retail groceries in the Phillips case could not claim exemption for its wholesale warehouse rendering services which the chain stores would otherwise procure from a separate company. A company operating numerous food stores cannot include as a part of its retail business its producing candy kitchens. Fred Wolferman, Inc., v. Gustafson, 8 Cir., 1948, 169 F.2d 759. The operator of sandwich counters in different railway stations cannot include as retail the operation of its commissary where the sandwiches are prepared. Armstrong Co. v. Walling, 1 Cir., 1947, 161 F.2d 515. The recent case of Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589, makes it plain that several separate businesses cannot be combined to take advantage of a high overall proportion of exempt transactions.

But these decisions, determining the proper treatment to be accorded to vertically and horizontally related businesses, do not answer the question of this case as to whether there is one, or more than one, business establishment. The matter must be approached and the particular circumstances of the Cotton Boll Market viewed in a "realistic sense", and the word "establishment" must be

used "as it is normally used in business and in government." A. H. Phillips, Inc., v. Walling, supra. One of the indicia of an "establishment" is a distinct physical place of business. A. H. Phillips, Inc., v. Walling, supra; McComb v. Wyandotte Furniture Co., 8 Cir., 1948, 169 F.2d 766. Another is a functional unity, Mitchell v. T. F. Taylor Fertilizer Works, 5 Cir., 1956, 233 F.2d 284, 286. In the latter case, this court, dealing with a fertilizer mixing plant and the company office five blocks away, said:

"We think that the trial court did not err in finding the plant and office in this case to be a single establishment, they being functionally an entity, and that the company is therefore a manufacturer or a retailer in all of its aspects".

It may be noted that the case before us, unlike many that have been decided, does not deal with the periphery of the exception. It is not an instance where a large employer engaging in retail trade obtains an exemption by virtue of the letter of the statute. The purpose of Congress was to insure exemption to "the corner grocery store man or the filling station man * * *, the local groceryman, druggist, clothing store, meat dealer * * *," 83 Cong.Rec. 7436–7438, cited in A. H. Phillips, Inc., v. Walling, supra. The general store or department store is by its nature varied. The corner store operator is not noted for the precise delineation of his functions or his scrupulous adherence to the accepted categories of business. In providing that up to 25% of the transactions need not be retail, the statute recognizes that such a business establishment's activities will quite likely not be homogeneous.

■ The business of Gammill, with the exception of the barbecue stand, was all conducted in one building, a distinct physical entity. In most respects of management it was operated as a unit. It was a single establishment. The district court found that the Cotton Boll Market was nothing more than a corner grocery or department store. We agree with the district court.

The question raised as to the interstate activities of the appellee's business was not reached for consideration by the district court and need not be considered here.

The judgment is without error. It is Affirmed.