James A. LEWIS et al.

v.

BRANDT FURNITURE, INC.

Willie BERNARD

v.

BRANDT FURNITURE, INC.

Civ. A. Nos. 11191, 11452.

United States District Court
W. D. Louisiana,
Lafayette Division.

Dec. 9, 1967.

Knight & Knight, Jennings, La., for plaintiffs.

Aaron & Aaron, Crowley, La., Davidson, Meaux, Onebane & Donohoe, Lafayette, La., for defendants.

EDWIN F. HUNTER, Jr., District Judge:

These cases were consolidated for trial and decision.

Plaintiffs seek to recover unpaid minimum wages and unpaid overtime compensation, plus damages and attorneys' fees which they allege are due and owing to them under the provisions of the Fair Labor Standards Act (52 Stat. 1060 of 1938, as amended; 29 U.S.C.A. § 201 et seq.).

The Court derives jurisdiction from the provisions of the Act. See, 28 U.S. C.A. § 1337 and 29 U.S.C.A. § 216(b).

Plaintiffs allege that the duties performed by them for the defendant consisted substantially of receiving, unloading, and otherwise handling goods shipped from outside the State of Louisiana, and that they were, therefore, engaged in commerce and in the production of goods for commerce within the meaning of the Act. Defendant admits the above allegation, but asserts that it is exempted from the wage and hour requirements of the Act by virtue of the fact that it is a "retail or service establishment" under Section 13(a) (2) of the Act—29 U.S.C.A. § 213(a) (2).

The essential facts are not in serious dispute. Mr. Jacob Brandt is the owner and operator of two retail furniture stores: one located in Crowley, Louisiana, doing business as a corporation by the name of Brandt Furniture, Inc. (which is made the defendant in the cases at bar); the other located in Rayne, Louisiana, doing business as a corporation by the name of Brandt Furniture

of Rayne, Inc. Brandt Furniture, Inc., the Crowley store, leases a separate warehouse or storeroom on East Mill Street in Crowley; it is a corrugated iron structure, measuring 100′ x 40′. This building is located several blocks away from the Brandt Furniture, Inc. retail outlet and showroom facility, and it is situated near a railroad siding.

It is admitted by plaintiffs that the operations of the two furniture store retail outlet facilities each qualify for the retail exemption. However, plaintiffs vigorously contend that the operation of the warehouse facility does not escape coverage, because it is not part of a "retail establishment." They argue that the East Mill Street building is not merely a storeroom for back-up merchandise used in the two retail showrooms, but that the building is in fact a wholesale warehouse of the type appurtenant to a chain store system, and that they are central warehouse employees.

Let us consider Mr. Brandt's furniture store operations during the period sued upon—from June 21, 1963 through June 21, 1965—and the interrelationship of the three buildings in question. Brandt Furniture, Inc., the Crowley store, made fifty per cent (50%) of its sales within the State of Louisiana, that seventy-five per cent (75%) of those sales were not for re-sale, and that seventy-five per cent (75%) of those sales would qualify as retail sales within the furniture industry.[1] We consider Brandt Furniture, Inc. to include both the Crowley retail outlet and the East Mill Street warehouse. Therefore, if both of the buildings involved can be viewed as integral or inseparable parts of a single "establishment," it is agreed that the retail exemption will apply; and all employees "employed by" that establishment would be excluded from the benefits of the Act, with no distinction being made on the basis of where the employees did their work. Fair Labor Standards Act, Section 13(a) (2); 29 U.S.C.A. § 213(a) (2). See 29 C.F.R. 779, 779.301, 779.313

---

1. Statement of Mr. Jacob Brandt, as president of Brandt Furniture, Inc.—which affidavit is uncontradicted by any other evidence in the record.

(1964, reprint May 3, 1966); CCH-Labor Law Guide, Vol. 1, § 5281, pp. 4126–4127 (1–27–67); Labor Relations Reporter, vol. 6, WHM 91:1422 (2–4–67).

It has been stipulated that Brandt Furniture, Inc., of Crowley, received sixty per cent (60%) of its dollar volume of purchases at the furniture store retail outlet building, and that forty per cent (40%) of the dollar volume of purchases were received at the East Mill Street warehouse. It was further stipulated that Brandt Furniture of Rayne, Inc. receives virtually all of its merchandise from or through the facilities of Brandt Furniture, Inc. The merchandise received by the Rayne store is taken both from the Crowley retail outlet building and the warehouse on East Mill Street.

The Crowley retail outlet building has a storage area on the second floor where small appliances and small furniture pieces are held. The Rayne retail outlet has no storage facility. Large appliances and bulky pieces of furniture are received and stored at the East Mill Street warehouse; this merchandise is most often unloaded at the warehouse from railway boxcars or trucks.

The merchandise in all three of these buildings might be described as a "pool" of goods which is drawn upon by Mr. Brandt for either of his two corporate retail stores; the following is an excerpt from Jacob Brandt's deposition taken August 28, 1967, during which time he was being questioned by plaintiffs' counsel:

"Q. Now, did you have occasion during the period—now I'm speaking now of '63, '64, '65 period—did you have occasion to ship merchandise from Crowley, say, to the Rayne Store?

"A. Yes, sir, we shifted merchandise. We sent merchandise back and forth from our floor to their floor. Because, if they had merchandise on their floor and we needed it and we had nothing—we sold it—we would take it away from them and then give them something else to replace it from our Store. That was open merchandise exposed on our floor and on their floor.

"Q. I see.

"A. It's the normal thing to do. If, for example, you keep a table too long in one place it won't move, but if you move it upstairs it'll sell.

"Q. Now, you had no, what we would call, separate building where you took in all of your incoming furniture and merchandise, and say, either up-packed it or stored it for any length of time?

"A. (Witness shakes head indicating "No") * * * Most of the merchandise was delivered to our Store right here in Crowley. On the bulky stuff, we did have a stopping place there [at the East Mill Street warehouse], because it was too hard to handle and display at one time. We had Refrigerators [sic], Washers [sic], mattresses, box springs—things of that sort—that we had to have a dumping point to get a chance to make up beds, and so on, and bring the matresses over to our store. We just couldn't take them all at once." p. 11.

At times a boxcar would arrive which was loaded with merchandise ordered from a factory or wholesale distributor by the Crowley store, by the Rayne store and by other dealers in the area. Each store usually sent a truck to pick up its merchandise. The merchandise for the Crowley store might be brought immediately to the Crowley retail outlet building; or it might be stored in the East Mill Street warehouse. The merchandise for the Rayne store might be picked up and delivered directly to Rayne; or it might be stored in the warehouse until the Rayne store could send a truck to pick it up or until the Crowley store had occasion to send a truck to Rayne or its environs; or else, a Crowley truck might make a special trip to Rayne to deliver the merchandise.

No separate records were kept on any of the merchandise in the warehouse; instead, that merchandise was included in the general inventory of Brandt Furni-

ture, Inc. The following is an excerpt from the deposition of Brandt:

"Q. Now, you didn't keep any separate books on this Mill Street operation?

"A. No, sir. We, frankly, we never knew, within any reasonable figure, what was in there—except that we had merchandise there and we would go look for it.

"Q. Well, I take it then, when you would, say, conduct * * * inventory around the first of the year, that merchandise in the Mill Street properties were inventoried as merchandise in your Crowley operation, so to speak?

"A. That's right.

"Q. There was no separation of those two (2) operations, either by virtue of paying taxes on the merchandise or any other way?

"A. No, there's no separation. We had, actually, in my opinion, no record —Well, I know we had no record of any particular items or anything else that was in the warehouse. If we wanted something and we knew we didn't have it on the floor, we would go look for it." p. 16.

The plaintiffs were employed primarily as either servicemen or deliverymen, and one was a porter. They reported for work each morning at the Crowley retail outlet building. They performed chores incident to a retail furniture business. The servicemen serviced and installed appliances for customers. The deliverymen delivered merchandise and installed linoleum and carpeting. All were subject to being called upon to lend a hand in any task that might present itself. All were at one time or another, and some quite often, required to help in the unloading of newly arrived merchandise. This merchandise might be unloaded from trucks onto the sidewalk in front of the retail outlet building, or from trucks or railway boxcars at the warehouse. No employee was assigned to the warehouse on a full-time basis; all of the plaintiffs spent substantially more of their employment time engaged in ac-

tivities away from the warehouse. Whenever there was something that had to be done at the warehouse, Mr. Brandt would send whomever was most available.

■ The issue presented for this Court's determination is whether or not the plaintiffs, who aided in unloading goods which had moved in interstate commerce and which were placed in the East Mill Street warehouse by them, were entitled to minimum wage and overtime compensation benefits because of this "handling" of goods in commerce, or whether this activity is excluded from the provisions of the Act because their employer, Brandt Furniture, Inc., qualifies as a "retail establishment" under Section 13(a)(2). We find that plaintiffs were employed by a retail establishment and that the unity of that single retail establishment is not shattered because two separate structures were necessary to its functioning.

A determination of this case depends principally upon a definition of the word "establishment" as used in the phrase "retail establishment." If the East Mill Street warehouse cannot be considered as part of the Brandt Furniture, Inc. "retail establishment"—i. e., if it is instead a distinct wholesale warehousing establishment, then the Fair Labor Standards Act would operate to allow the plaintiffs' claims. See Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946); A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); Mitchell v. Sunshine Department Stores, Inc., 292 F.2d 645 (5 Cir. 1961); Mitchell v. C. & P. Shoe Corporation, 286 F.2d 109 (5 Cir. 1960); Mitchell v. Royal Baking Co., 219 F.2d 532 (5 Cir. 1955); Stewart-Jordan Distributing Co. v. Tobin, 210 F.2d 427 (5 Cir. 1954); McComb v. Wyandotte Furniture Co., 169 F.2d 766 (8 Cir. 1948); Walling v. American Stores Co., 133 F.2d 840 (3 Cir. 1943); Fleming v. Jacksonville Paper Co., 128 F.2d 395

(5 Cir. 1942); De Loach v. Crowley's Inc., 128 F.2d 378 (5 Cir. 1942); Edwards v. McLellan Stores Co., 126 F. Supp. 81 (E.D.Tenn.1954). Compare Domenech v. Pan American Standard Brands, 147 F.2d 994 (1 Cir. 1945); Clyde v. Broderick, 144 F.2d 348 (10 Cir. 1944).

▇ An employer who claims an exemption from the remedial provisions of the Fair Labor Standards Act bears the burden of proving by a preponderance of the evidence that he comes plainly and unmistakably within the scope of that exemption. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); Wirtz v. C. & P. Shoe Corporation, 336 F.2d 21 (5 Cir. 1964); Acme Tire and Battery Company v. Wirtz, 330 F.2d 116 (5 Cir. 1964); Gatlin v. Mitchell, 287 F.2d 76 (5 Cir. 1961).

The plaintiffs liken Mr. Brandt's furniture business to a chain store operation consisting of three separate establishments: two retail establishments and a wholesale warehouse establishment. The landmark case applying the retail exemption to a chain store operation is A. H. Phillips, Inc. v. Walling, supra. There the Supreme Court considered whether a central warehouse which serviced forty-nine (49) retail outlets in two (2) states qualified for the "retail establishment" exemption of Section 13(a) (2). The following excerpts from the Court's opinion are pertinent here:

"The independent wholesaler or middleman has been eliminated from the channel of distribution of petitioner's merchandise. Petitioner not only operates the retail outlets but purchases the merchandise in quantity from producers, stores it in a warehouse and systematically allots it to the individual stores. Certain economies in operation result from this direct mass buying and centralized merchandising control which would otherwise be impossible to achieve. * * *

"There are, to be sure, certain distinctions between the wholesale activities of a chain store system and those of an independent wholesaler. Thus a chain store enterprise does not customarily sell merchandise in its warehouse to retailers or other wholesale customers as does an independent wholesaler. The goods stored in a chain store warehouse are merely distributed rather than sold to the retail stores." 324 U.S. 490, at page 494, 65 S.Ct. 807, at page 808.

"In a realistic sense * * * most chain store organizations are merchandising institutions of a hybrid retail-wholesale nature. They possess the essential characteristics of both the retailer and the wholesaler. Their wholesale functions, which are integrated with but are physically distinct from their retail functions, are performed through their warehouses and central offices. That fact is the essential key to the problem presented by this case." 324 U.S. 490, at pages 495–496, 65 S.Ct. 807, at page 809.

" * * * Congress used the word 'establishment' as it is normally used in business and in government—as meaning a distinct physical place of business—petitioner's enterprise is composed of 49 retail establishments and a single wholesale establishment." 324 U.S. 490, at page 496, 65 S.Ct. 807, at page 810.

The Court concluded that the duties of the employees of the chain store warehouse were economically, functionally and physically like those of employees in an independent wholesale warehousing operation.

The Phillips case is most often referred to and relied upon for its definition of "establishment" as "a distinct physical place of business." Wirtz v. Savannah Bank & Trust Company of Savannah, 362 F.2d 857, 863 (5 Cir. 1966); Mitchell v. Gammill, 245 F.2d 207, 211 (5 Cir. 1957); 29 C.F.R. 779, 779.23 (1964, reprint May 3, 1966); CCH-Labor Law Guide, vol. 1, § 5283, p. 4127 (1–27–67); Labor Relations Reporter, vol. 6, WHM

91:1425 (11–14–64). See Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589 (1957). Some decisions have used physical unity as an exclusive test for determining establishment status, resulting in the idea that there can never be a single establishment which uses more than one physical building or structure. Mitchell v. Birkett, 286 F.2d 474 (8 Cir. 1961).

To better understand the weight to be given the "distinct physical place of business" test used in *Phillips,* it must be remembered that prior to that decision some courts had decided that an "establishment" might be as complex as an employer's business activity, and that there might be several retail outlets and wholesale warehouses within a single "establishment." In short, "establishment" was equated with "business," and so long as the entire business of an employer met the percentage requirements of Section 13(a) (2), that business in its entirety was viewed as a single exempt retail establishment. Walling v. Block, 139 F.2d 268 (9 Cir. 1943); Walling v. L. Wiemann Co., 138 F.2d 602, 150 A.L.R. 878 (7 Cir. 1943); White v. Jacobs Pharmacy Co., 47 F.Supp. 298 (N.D.Ga.1942); Duncan v. Montgomery Ward & Co., 42 F.Supp. 879 (S.D.Tex.1941); Veazey Drug Co. v. Fleming, 42 F.Supp. 689 (W.D.Okl.1941); 150 A.L.R. 884. The Supreme Court, in *Phillips,* made it clear that an establishment was a distinct place of business and not a grouping of places of business, and that in applying the retail exemption each place of business must be considered separately. The Court did not say that a *place* of business must consist of but a single physical structure.

■ Separate physical facilities are indicative of distinct places of business; but that test is not conclusive; it is only one of the criteria to be used in determining the dimensions of any particular establishment. Acme Car & Truck Rentals, Inc. v. Hooper, 331 F.2d 442, 444–445 (5 Cir. 1964). See Grimes v. Castleberry, 381 F.2d 758 (5 Cir. 1967); Mitchell v. T. F. Taylor Fertilizer Works,

233 F.2d 284 (5 Cir. 1956); Bogash v. Baltimore Cigarette Service, 193 F.2d 291 (4 Cir. 1951); Goldberg v. Fritschy, 198 F.Supp. 743 (W.D.N.C.1961); Hammonds v. J. W. Broom & Sons, 195 F.Supp. 504 (W.D.N.C.1961).

The determination of what constitutes the "esablishment" is a problem to be decided from all the facts in any given case. Walling v. Jacksonville Paper Co., supra; Acme Car & Truck Rentals, Inc. v. Hooper, supra; Boisseau v. Mitchell, 218 F.2d 734, 738 (5 Cir. 1955). The task which confronts the Court has been described as one of "drawing lines" to set the bounds of the establishment under consideration. Walling v. American Stores Co., supra, 133 F.2d p. 845.

Surely, all will agree that where a single retail outlet is serviced by its own warehouse the two facilities are part of a single establishment. It would not matter that the warehouse is situated apart from the retail outlet building. CCH-Labor Law Guide, vol. 1, § 5290, p. 4131 (1–27–67); Labor Relations Reporter, vol. 6, WHM 91:1424 (2–4–67). A warehouse which serves as a storage area for back-up merchandise dispersed in a single retail outlet is an inseparable part of the "retail establishment"; and the retail exemption applies to the operation of that warehouse. Mitchell v. T. F. Taylor Fertilizer Works, supra; Bogash v. Baltimore Cigarette Service, supra.

■ In order for a warehouse which services a retail facility to be excluded from the scope of the retail establishment exemption, that warehouse must have the character of a wholesale warehousing establishment—i. e., the warehouse must serve a "wholesale function." In *Phillips* the Supreme Court recognized that the warehousing activities of chain store systems were an integral part of their retail functioning. But in such large chain store operations these warehouse facilities replaced the wholesaler-middleman. The Court concluded that these chain stores were "institutions of a hybrid retail-wholesale nature," that their warehousing activities were "economically,

functionally and physically" like those of wholesale warehouse establishments.

The hybrid character or multiple functioning of chain stores has been consistently recognized by the courts when they have separated the functional units for the purpose of applying the retail exemption. And retail outlet facilities have been distinguished from warehouse facilities on the basis of the *distinct* "wholesale function" served by the latter. Wirtz v. C. & P. Shoe Corporation, supra; Mitchell v. Sunshine Department Stores, Inc., supra; Mitchell v. Gammill, supra; Montgomery Ward & Co. v. Antis, 158 F.2d 948 (6 Cir. 1947). Where the warehouse is not comparable to a distinct wholesale establishment, however, the courts have viewed the warehouse and retail outlet facilities as a single establishment, finding that there is a functional integration. Grimes v. Castleberry, supra. See also Mitchell v. Gammill, supra; CCH-Labor Law Guide, vol. 1, § 5283, p. 4127 (1–27–67). Compare, Brewer's Inc. v. Wirtz, 375 F.2d 911 (5 Cir. 1967); Acme Car & Truck Rentals, Inc. v. Hooper, supra. (In *Grimes*, the Court considered also the *size* of the employer's business for the purpose of "drawing the line.") Where the warehousing and retailing activities of a retail establishment are not functionally distinct but are functionally intermingled, then there is but a single establishment, which establishment is eligible to qualify for the retail exemption. It does not matter that the activities are carried on in separate buildings.

We have no difficulty in concluding that under the facts of this case Brandt Furniture, Inc.'s East Mill Street warehouse was not a separate wholesale warehousing establishment. It did not serve a wholesale function. It did not have a wholesale character. Considered alone, it could hardly be called a "place of business." Rather, its purpose was to provide back-up merchandise for Brandt Furniture, Inc. and for Brandt Furniture of Rayne, Inc. In looking at the jurisprudence on this issue, we note that the smallest number of stores which was ever found to have had a central warehouse or a chain store operation was a minimum of five stores. Further, in each of these cases, an actual central warehouse, with a central warehouse group of employees was in existence. Clearly, this is not our case. To the contrary, we have in the instant case two small retail stores which as an incident to the operation lease a warehouse building where the large bulky items are kept. They do not have an office at this warehouse, nor does it maintain records, nor does it have an employee stationed there. This case is controlled, we believe, by two recent Fifth Circuit decisions: Brewer's, Inc. v. Wirtz, 375 F.2d 911, and Grimes v. Castleberry, 381 F.2d 758.

Holding as we do that the employees are exempt from coverage, it follows that there should be judgment for defendant. There is.