421 F.2d 504
 19 Wage & Hour Cas. (BN 370
 Ruben H. GILREATH, Elmer E. Johnson, Rodney F. Daniels,
Cecil Leroy Boyd and A. Gale Williams, Appellees,
v.
DANIEL FUNERAL HOME, INC., Appellant.
Ruben H. GILREATH, Elmer E. Johnson, Rodney F. Daniels,
Cecil Leroy Boyd and A. Gale Williams, Appellants,
v.
DANIEL FUNERAL HOME, INC., Appellee.
 Nos. 19646, 19647.
 United States Court of Appeals, Eighth Circuit.
 Feb. 3, 1970.
 
 H. Watt Gregory, III, of Rose, Meek House, Barron, Nash & Williamson, Little Rock, Ark., for Daniel Funeral Home, Inc. and filed briefs.
 Comer Boyett, Jr., of Henry & Boyett, Searcy, Ark., for Messrs. Gilreath, Johnson, and others and filed brief.
 Before VAN OOSTERHOUT, Chief Judge, and MATTHES and HEANEY, Circuit judges.
 MATTHES, Circuit Judge.
 
 
 1
 This is a timely appeal and cross-appeal from the final judgment[1] rendered on October 31, 1968, by the United States District Court for the Eastern District of Arkansas. We shall refer to the parties as they were designated in the trial court. The complaint was filed on May 5, 1967, by Ruben H. Gilreath, et al., under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. 201 et seq., seeking unpaid minimum wages and overtime compensation, an additional and equal amount as liquidated damages, and reasonable attorneys' fees and costs. The district court found in favor of plaintiffs for a portion of their claim and, in so doing, found that Daniel Funeral Home, Inc., was not exempt from the provisions of the Act as a 'retail or service establishment' within the meaning of 29 U.S.C. 213(a)(2).
 
 
 2
 Most of the facts are undisputed and may be summarized as follows:
 
 
 3
 Defendant is a closely-held family corporation and at all times here pertinent operated a funeral home in Searcy, Arkansas. The sole stockholders are Mrs. Julia Mae Daniel and her daughter, Hiawatha.
 
 
 4
 Operating in the same one-story building as the funeral home is Daniel Insurance Company, a mutual assessment burial insurance company. This company has no stockholders, and ultimate control is reposed in its participating members by virtue of Ark.Stat.Ann. 66-4509(2) (repl. 1966). The funeral home and insurance company have identical boards of directors. However, each maintains separate books of account, records, and bank accounts.
 
 
 5
 All of the plaintiffs were employed by defendant for varying periods of tenure from May 5, 1965, to July 31, 1966-- the period of time for which suit was brought[2] -- and were paid straight monthly salaries without any overtime compensation. Cecil Leroy Boyd, A. Gale Williams, and Rodney Daniels were employed as funeral directors; Ruben Gilreath and Elmer Johnson were janitorial and custodial employees whose principal duties were digging graves and arranging gravesites for burial services.
 
 
 6
 The business of Daniel Insurance Company involves the issuing of certificates or policies of burial insurance, mailing premium or delinquency notices, receiving premium payments, paying out benefits, and otherwise servicing policyholders. Most of the certificate holders of the insurance company are Arkansas residents; however, a substantial number are out-of-state residents.[3]
 
 
 7
 The insurance company was established to promote the business interests of defendant: Between 80 and 90 percent of all funerals conducted by defendant involve policyholders of Daniel Insurance Company. The insurance company has no separate employees. Pursuant to an agreement between Daniel Insurance Company and defendant, the latter agreed to operate the former and furnish all printing, stationery, postage, and office supplies, all other expenses and clerical help, in consideration for which the insurance company agreed to pay defendant 20 percent of its gross annual receipts. The insurance company has quarterly assessment periodsMarch, June, September, and December-- during which the bulk of the insurance work is transacted.
 
 
 8
 Two women employees and the manager of defendant, not parties to this suit, were primarily responsible for the daily insurance work. It is undisputed, however, that plaintiffs Daniels, Boyd, and Williams performed some such work, particularly during the heavy demands of the premium assessment months. The extent of their daily involvement with the insurance business was disputed.
 
 
 9
 The district court, in its memorandum opinion of June 12, held that the defendant and Daniel Insurance Company constituted a single establishment within the meaning of the Fair Labor Standards Act.[4] As such, it could not qualify for the retail or service establishment exemption, since less than 75 percent of the combined gross annual income of the two companies, as stipulated to by the parties, came from sales and services recognized as retail in the industry, as required by 29 U.S.C. 213(a)(2). In its final memorandum opinion of October 10, the court held that the plaintiffs were engaged in commerce within the meaning of the Act by reason of their work for Daniel Insurance Company during each of its quarterly assessment months and for one-half of each following month.[5] Accordingly, the hourly wage of each of the plaintiffs was computed, the defendant was found to have violated the minimum wage and overtime provisions of the Act, and the court made a specific award to each plaintiff in its amended order of October 31. Liquidated damages and attorneys' fees were also approved.
 
 No. 19,646
 
 10
 The precise and sole issue presented on direct appeal is whether defendant and Daniel Insurance Company constitute a single establishment within the meaning of 29 U.S.C. 213(a)(2).[6] Plaintiffs concede that if the two companies are held to be separate establishments, then defendant qualifies for the exemption, since the character of the funeral home business as involving retail sales or services is recognized in the industry, Smith v. Taylor, 375 F.2d 1000, 1003 (5th Cir.1967), and by the Secretary of Labor, 29 C.F.R. 779.320. In that event, plaintiffs concede that their claims should be denied. Conversely, defendant admits that if it and the insurance company are held to constitute but a single establishment within the meaning of the Act, then coverage exists, since the transactions of an insurance company are not considered to be retail sales or services by the Secretary of Labor, 29 C.F.R. 779.316-7, and the stipulated gross annual income of the two businesses here, when combined, fails to meet the 75 percent retail sales or services test of 29 U.S.C. 213(a)(2).
 
 
 11
 The term 'establishment' is not defined in the Fair Labor Standards Act itself. The Supreme Court, in the leading case on the question, held that 'Congress used the word 'establishment' as it is normally used in business and in government-- as meaning a distinct physical place of business * * *.' A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 496, 65 S.Ct. 807, 810, 89 L.Ed. 1095 (1945). See also Acme Car & Truck Rentals, Inc. v. Hooper, 331 F.2d 442 (5th Cir.1964); Mitchell v. Birkett, 286 F.2d 474 (8th Cir.1961); Mitchell v. Gammill, 245 F.2d 207 (5th Cir.1957); McComb v. Wyandotte Furniture Co., 169 F.2d 766 (8th Cir.1948). The administrative regulations promulgated pursuant to the Act agree with this definition. 29 C.F.R. 779.23. The question of what constitutes an 'establishment' in any given case is one of law to be determined from all the facts. Acme Car & Truck Rentals, Inc. v. Hooper, supra, 331 F.2d at 444. And, in light of the remedial purposes of the Act, exemption from coverage thereunder is to be narrowly construed against the party asserting it. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); A. H. Phillips, Inc. v. Walling, supra, 324 U.S. at 493, 65 S.Ct. 807. The burden is upon the employer to establish an exemption from the Act. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); Mitchell v. Kroger Co., 248 F.2d 935, 941 (8th Cir.1957).
 
 
 12
 A distinct geographical separation between the locus of the business operations of defendant and Daniel Insurance Company is not present here. Both businesses operate out of the same premises, the funeral home building. Thus, the instant case is clearly distinguishable from Mitchell v. Birkett, supra, for example, where two admittedly retail photo shops located 9 miles apart were held to be separate establishments, notwithstanding the common ownership and close functional and economic relationship between the two. But see Mitchell v. T. F. Taylor Fertilizer Works, Inc., 233 F.2d 284 (5th Cir.1956). The existence of two separate businesses under one roof does not automatically compel a finding of a single establishment, however. Prior decisions by this court and others have gone both ways on the question, and the critical factor in each case has been the integrity of the economic, physical, and functional separation between the business units. For decisions finding separate establishments see Fred Wolferman, Inc. v. Gustafson, 169 F.2d 759 (8th Cir. 1948); Armstrong Co. v. Walling, 161 F.2d 515 (1st Cir.1947); Wirtz v. Campus 52 CCH Lab.Cas. P31,736 (M.D.N.C.1965). Wirtz v. Modern Builders, Inc., 288 F.Supp. 338 (M.D.Ga.1968); Wessling v. Carroll Gas Co., 266 F.Supp. 795 (N.D.Iowa 1967); Harris v. Kale, 52 CCH Lab.Cas. P31,736 (M.D.N.C.1965). For decisions finding a single establishment see Acme Car & Truck Rentals, Inc. v. Hooper, supra;[7] Mitchell v. Gammill, supra.
 
 
 13
 In our view, the teachings of the above cases are recognized and enunciated in one particular administrative regulation, 29 C.F.R. 779.305, which is entitled 'Separate establishments on the same premises' and states in relevant part:
 
 
 14
 'Although, as stated in the preceding paragraph, two or more departments of a business may constitute a single establishment, two or more physically separated portions of a business though located on the same premises, and even under the same roof in some circumstances may constitute more than one establishment for purposes of the exemptions. In order to effect such a result physical separation is a prerequisite. In addition, the physically separated portions of the business also must be engaged in operations which are functionally separated from each other. The retail portion of the business must be distinct and separate from and unrelated to that portion of the business devoted to other activies. * * * In other words, the retail portion of an establishment would be considered a separate establishment from the unrelated portion for the purpose of the exemption if (a) it is physically separated from the other activities; and (b) it is functionally operated as a separate unit having separate records, and separate bookkeeping; and (c) there is no interchange of employees between the units. The requirement that there be no interchange of employees between the units does not mean that an employee of one unit may not occasionally, when circumstances require it, render some help in the other units or that one employee of one unit may not be transferred to work in the other unit. The requirement has reference to the indiscriminate use of the employee in both units without regard to the segregated functions of such units.'
 
 
 15
 It is well established that the interpretive regulations issued by the Secretary of Labor are generally valid and binding, as a reasonable exercise of delegated authority. Craig v. Far West Engineering Co., 265 F.2d 251, 257, 72 A.L.R.2d 1143 (9th Cir.), cert. denied, 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); Stanger v. Vacafilm Corp., 151 F.2d 894 n. 1, 162 A.L.R. 216 (2d Cir.1945); Sun Publishing Co. v. Walling, 140 F.2d 445, 449 (6th Cir.), cert. denied, 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564 (1944). We believe the criteria of 29 C.F.R. 779.305 to be a reasonable construction of the express provisions and remedial spirit of the Fair Labor Standards Act.
 
 
 16
 Defendant specifically contends that the weight of evidence established its adherence to all three criteria for a separate establishment as delineated in 29 C.F.R. 779.305. In its preliminary memorandum opinion, the district court made no specific factual findings on the establishment question, nor did it refer to 779.305 of the regulations in denying defendant's exemption claim. The court simply concluded that 'without stopping to elaborate on the subject at this time the Court finds and holds that all three of the concerns involved in the case constitute a single 'establishment,' and certainly that the insurance company is not an establishment separate from the funeral home.' In its final memorandum opinion, however, the court found that (1) a number of defendant's own employees also performed work for Daniel Insurance Company, and the latter had no separate employees, (2) none of the plaintiffs was covered under the Act by virtue of any work he performed for defendant, and (3) plaintiffs were nevertheless partially covered during the suit period by virtue of their work for the insurance company during its peak premium assessment periods.
 
 
 17
 It is quite obvious that implicit in the district court's finding is the conclusion that there was indiscriminate interchange of employees between defendant and Daniel Insurance Company in violation of the third requirement of 29 C.F.R. 779.305. This is so because of the court's ultimate holding that plaintiffs were covered under the Act, since they were found not to be so covered by virtue of work performed for defendant. Moreover, the court must have concluded that this employee interchange went beyond isolated or sporadic occurrences, for it recognized in its preliminary memorandum opinion that coverage under the Act requires that a substantial part of an employee's activities relate to interstate commerce or the production of goods for interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460 (1943).
 
 
 18
 Defendant argues, in substance, that the district court's implicit finding of an indiscriminate interchange of employees is clearly erroneous. We do not agree. The testimonial evidence of the extent to which plaintiffs performed work for Daniel Insurance Company stands contradicted on the record. We are not at liberty to resolve independently and de novo this factual controversy. Credibility of witnesses is peculiarly within the province of the trial judge. Dunlap v. Warmack-Fitts Steel Co., 370 F.2d 876, 879 (8th Cir.1967); Baker v. United States, 343 F.2d 222, 224 (8th Cir.1965). Having fully examined the record, we find substantial evidence to support the district court's implicit conclusion; hence, we are not left with a distinct and compelling impression that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Cleo Syrup Corp. v. Coca-Cola Co., 139 F.2d 416, 417-18 (8th Cir.1943), cert. denied, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074 (1944).
 
 
 19
 Since the three prerequisites of 29 C.F.R. 779.305 are joined in the conjunctive, the defendant cannot prevail on its exemption claim without proof of conformity to each requirement. Having determined that the district court committed no error in implicitly finding that defendant had not carried its burden of proving compliance with the regulatory admonition regarding interchange of employees between two businesses located upon the same premises, we need not consider whether defendant complied with the first two requirements outlined in the same regulation.
 
 No. 19,647
 
 20
 The question for decision here is whether the district court erred in denying plaintiffs coverage for the entirety of the respective periods of their employment. Their principal complaint is with the court's finding that, while Daniel Insurance Company transacted some business of some sort every week and probably every day during the suit period, it was nevertheless not engaged in commerce within the meaning of the Fair Labor Standards Act except during the quarterly premium assessment months and one-half of each succeeding month.[8]
 
 
 21
 The first argument advanced by plaintiffs is that the district court improperly ignored a stipulation of the parties that, 'at all times material to this law suit,' Daniel Insurance Company was engaged in interstate commerce. Coverage under the Fair Labor Standards Act, however, is dependent upon the character of the activities of each individual employee, not upon the nature of the employer's business. Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 213, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959); Walling v. Jacksonville Paper Co., supra, 317 U.S. at 571-572, 63 S.Ct. 332; A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); Wirtz v. First State Abstract & Insurance Co., 362 F.2d 83, 87 (8th Cir. 1966); Chambers Construction Co. v. Mitchell, 233 F.2d 717, 720 (8th Cir. 1956). To be sure, the distinction drawn is not absolute and exclusive. 'In determining whether an individual employee is within the coverage of the wage and hours provisions, however, the relationship of an employer's business to commerce or to the production of goods for commerce may sometimes be an important indication of the character of the employee's work.' 29 C.F.R. 776.2(b)(footnote omitted). See Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945). The district court concluded in this case that the insurance company was engaged in commerce for a total of 6 months in each year, and also that plaintiffs were so engaged in commerce by performing work for the insurance company during that same period of time. But it does not follow that the identity of these two periods of time was mandatory. The parties did not stipulate as to the time period or extent of plaintiffs' engagement in commerce, and the stipulation plaintiffs now assert could not have bound the district court on this separable and dispositive question.
 
 
 22
 Plaintiffs next argue that, once having shown that they were engaged in commerce during some part of their employment, the lower court erred in failing to shift the burden of proof to the defendant to show in what periods of time plaintiffs were not engaged in commerce. We have no quarrel with plaintiffs' statement of the law. In a civil case brought under 29 U.S.C. 216(b), it is clear that the employee, or the government suing in his behalf, must prove initially that the employee was covered by the Act, that is, that he was 'engaged in (commerce or in) the production of goods for commerce.' D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 120, 66 S.Ct. 925, 931, 90 L.Ed. 1114 (1946); Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. 83 (1942). But there is cogent authority that, once shown to be engaged in commerce, the burden of proof shifts to the employer to show in what pay periods the employee was not so engaged.[9] See 29 C.F.R. 776.4(b); Guess v. Montague, 140 F.2d 500, 504 (4th Cir.1943); Wirtz v. First State Abstract & Insurance Co., supra, 362 F.2d at 89; Mitchell v. Owen, 292 F.2d 71, 78-79 (6th Cir.1961); Hagan v. Goldberg, 291 F.2d 249, 251 (9th Cir.1961).
 
 
 23
 We cannot agree with plaintiffs that the burden of proof in this case did not shift and that the defendant did not carry its burden. The district court was acutely aware of this evidentiary precept. In its preliminary memorandum opinion, it stated: 'It is settled that the initial burden of proof is upon a plaintiff in a case of this kind to establish hours worked and weeks of coverage; but it is also well settled that if the plaintiff goes far enough to show those things as a matter of fair and reasonable estimate, then the burden shifts to the defendant to come forward with specific evidence as to hours worked and weeks of coverage or noncoverage.' One of defendant's witnesses testified that she had carefully examined all of the insurance company's cash register receipts during time periods other than prime premium assessment months. She asserted that the employee code letters on those receipts showed that the plaintiffs were only minimally involved at best in any interstate transactions during those periods. Plaintiffs contested this assertion, but the district court must have credited it. While the evidence on both sides of this controversy was unsatisfactory, as the district court noted in both of its memorandum opinions, we do find record evidence to support the court's limitation of plaintiffs' recovery to the respective weeks specified in the appendix to its final opinion. That determination is not clearly erroneous.
 
 
 24
 The judgment is in all respects affirmed.
 
 
 25
 Costs shall be divided equally between the parties.
 
 
 
 [1]
 A preliminary memorandum opinion filed on June 12, 1968, is reported at 18 Wage & Hour Cas. 514 (1968). The final memorandum opinion of October 10 and the amendment to that opinion filed on October 31 are not reported
 
 
 [2]
 All claims of plaintiffs for work performed prior to May 5, 1965, were barred by the 2-year statute of limitations, 29 U.S.C. 255(a)
 
 
 [3]
 The district court did not specifically determine what proportion of the policyholders of Daniel Insurance Company were out-of-state residents during the suit period, other than to denominate it as 'substantial.' The only testimony on this matter indicated that approximately one-seventh of the policyholders were non-Arkansas residents. It is settled, and defendant does not contest, that an insurance company which conducts a substantial portion of its business transactions across state lines is engaged in commerce within the meaning of the Fair Labor Standards Act. United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); Wirtz v. First State Abstract & Insurance Co., 362 F.2d 83 (8th Cir. 1966)
 
 
 [4]
 The district court also included in its single establishment definition a third corporation wholly owned by Mrs. Julia Mae Daniel and her daughter, Daniel Monument Company, Inc., whose sales office and display yard is located approximately one mile from the funeral home building in Searcy. The parties agree, however, that consideration of the monument company in the definition of the establishment for purposes of this appeal is immaterial, since its stipulated gross annual income is so small in comparison to that of the funeral home and insurance company as to have no mathematical effect on the critical 75 percent retail sales or services test of 29 U.S.C. 213(a)(2)
 
 
 [5]
 Plaintiffs Gilreath and Johnson were held to be covered under the Act for the reason that their services-- the custodial care and cleaning of the insurance company's separate workroom-- bore a close and essential relationship to the functioning of the insurance company in which productive operations for commerce were carried on. See Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945); A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); Union National Bank of Little Rock, Ark. v. Durkin, 207 F.2d 848 (8th Cir. 1953); Darr v. Mutual Life Insurance Company of New York, 169 F.2d 262 (2d Cir.), cert. denied, 335 U.S. 871, 69 S.Ct. 166, 93 L.Ed. 415 (1948)
 
 
 [6]
 In its present form, 29 U.S.C. 213(a)(2) reads in pertinent part as follows:
 '(a) The provisions of sections 206 (minimum wage) and 207 (maximum hours) of this title shall not apply with respect to--
 (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment-- (i) is not in an enterprise described in section 203(s) of this title, or (iv) is in such an enterprise and has an annual dollar volume of sales * * * which is less than $250,000. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *.'
 No contention has been made that appellant qualifies for enterprise coverage.
 
 
 [7]
 We regard Hooper as strikingly similar factually to our present case. The district court's holding in Hooper that there were two separate establishments was reversed on appeal
 
 
 [8]
 It should be noted that plaintiffs do not contest the court's finding that they were not covered during any portion of the suit period by virtue of work performed for defendant
 
 
 [9]
 The rationale for shifting the burden of proving the employee's engagement in commerce is the same as that commonly stated for shifting the burden of proving the extent and amount of uncompensated work performed by the employee: The employer is the party who has the duty under 29 U.S.C. 211(c) to maintain employment records, and it is peculiarly in the position to furnish the most probative facts regarding the interstate commerce connections of its business and its employees. See Anderson v. Mt. Clemens Pottery Col., 328 U.S. 680, 686-688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)