34

John T. DUNLOP, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

MOTHER HUBBARD'S KITCHEN, INC.,
a corporation, d/b/a Quick Pride Bakery
and Quick Shop Markets, Inc., a corporation, Defendants.

No. 75–385 C(1).

United States District Court,
E. D. Missouri, E. D.

June 3, 1976.

William J. Kilberg, Washington, D. C., T. A. Housh, Daniel J. Mick, U. S. Dept. of Labor, Kansas City, Mo., Barry A. Short, U. S. Atty., Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Richard L. Barnes, Kothe, Nichols & Wolfe, Inc., Tulsa, Okl., John F. McCartney, St. Louis, Mo., for defendants.

## MEMORANDUM

MEREDITH, Chief Judge.

This action is before the Court on stipulations of fact by the parties and cross motions for summary judgment. For the reasons stated below, judgment will be granted for plaintiff.

The Secretary of Labor has brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., to enjoin Mother Hubbard's Kitchen, Inc., (hereinafter Mother Hubbard's) and Quick Shop Markets, Inc., (hereinafter Quick Shop, Inc.) from violating the minimum wage and maximum hour provisions of the Act and to restrain the continued withholding of unpaid minimum wages due to approximately thirty Mother Hubbard's employees for the period of April 1973 to December 31, 1975, and unpaid overtime wages due to approximately forty-five Mother Hubbard's employees for the period of April 1973 to January 1, 1975. The sole issues raised in this case are whether the two corporations are an enterprise within the coverage of the Act and whether the employees of Mother Hubbard's, not being the proper subjects of a section 213 exemption, have been paid substandard wages according to section 206, and have not been compensated at the statutory rate for overtime hours under section 207.

The uncontested facts are as follows. Defendant Quick Shop, Inc., operates a chain of approximately seventy retail stores in the State of Missouri. During the period in question, some of the stores operated by Quick Shop, Inc., were converted to franchise stores, so that the number of franchise outlets has increased from approximately six to approximately thirty-six, with a corresponding decrease in the number of stores operated directly by Quick Shop, Inc. Defendant Mother Hubbard's is engaged in the production of bakery goods under the Quick Pride Bakery label, for sale through the convenience food stores owned and operated by Quick Shop, Inc., or its franchisees, and through a retail outlet located on the premises of the bakery facility in

Fenton, Missouri, (hereinafter "the Fenton bakery facility").

Quick Shop, Inc., and Mother Hubbard's are closely held corporations with common shareholders. Quick Shop, Inc., owns all of the equipment and fixtures located on the bakery premises, purchases all goods and services used or consumed there, and furnishes all administrative services for Mother Hubbard's. The leasehold interest for the bakery premises was held during the relevant period by Quick Save Markets, Inc., an affiliate of Quick Shop, Inc. Quick Shop, Inc., and Mother Hubbard's filed a consolidated federal income tax return.

The Fenton bakery facility is the only bakery owned and operated by either Mother Hubbard's or Quick Shop, Inc. Bakery goods produced at the Fenton bakery are prepared for delivery to individual Quick Shop stores; delivery is made by contract drivers or by an employee of Mother Hubbard's. Employees employed in the retail portion of the Fenton bakery assist in the preparation and handling of route boxes, route slips, and returned goods, and in the cleaning of production equipment. Mother Hubbard's employees are paid from the cash receipts of the Fenton bakery facility, with any excess of receipts over checks drawn paid to Quick Shop, Inc.

Each franchise outlet pays Quick Shop, Inc., for its purchases of goods manufactured by Mother Hubbard's at wholesale prices and is credited by Quick Shops, Inc., for "day-old" merchandise returned to the Fenton bakery facility. Each convenience food store owned and operated by Quick Shop, Inc., has a "merchandise account" which is charged at ". . . the retail price . . . less 25% to 30%", and similarly credited for returned merchandise.

The bakery goods produced each day at the Fenton bakery facility are placed that same day in the various retail outlets operated by Quick Shop, Inc., and its franchisees; day-old goods sold at the retail outlet at the Fenton bakery facility are those items returned from the Quick Shop stores. Over the period in question, sixty percent of the goods sold at the retail outlet at the Fenton bakery facility consisted of returned day-old items. During the relevant period, the value of Mother Hubbard's sales to the franchise outlets ranged from 6.1 percent to 19.1 percent of Mother Hubbard's total annual dollar volume of sales. The sales to the stores owned and operated by Quick Shop, Inc., ranged from 60.3 percent to 79.8 percent of the total annual dollar volume of sales. The percentages for sales to the stores owned by Quick Shop, Inc., are calculated from the figures submitted to the Court, which state only the "retail" rather than the actual discount price charged to the stores.

During the relevant period, the combined annual gross sales of both corporate defendants exceeded $250,000, exclusive of excise taxes. The annual sales of Mother Hubbard's were consistently less than $250,000. Defendant Quick Shop, Inc., has and has had since April 1973, employees handling, selling, or otherwise working on goods which have been moved in or produced for commerce.

Sections 206(b) and 207(a)(2) of the Fair Labor Standards Act require every employer to pay each of his employees who is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, a specified minimum and overtime wage. Section 213(a)(2) of the Act exempts from sections 206 and 207 any employee employed by any retail or service establishment if the establishment has fifty percent in-state sales and if it is not a section 203(s) enterprise, or if part of such enterprise has a dollar volume of sales which is less than $250,000. This special dollar amount exemption for individual stores comprising a chain or enterprise has been reduced to $200,000 as of July 1, 1975, and totally repealed as of July 1, 1976, by the 1974 Amendments to the Fair Labor Standards Act, Pub.L. 93–259, 87 Stat. 61–69, 72.

A "retail or service establishment" is defined in section 213(a)(2) as

". . . an establishment 75 per centum of whose annual dollar volume of

sales . . . is not for resale and is recognized as retail sales or services in the particular industry."

A section 203(s) enterprise is

". . . an enterprise which has employees . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which—

"(1) . . . is an enterprise whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes . . .);

. . ."

An "enterprise" is defined in section 203(r) as

". . . the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . ."

Finally, section 213(a)(4) of the Act provides that a subsection (a)(2) retail establishment will not lose its exempt status even if it makes or processes at the retail establishment the goods that it sells, as long as more than eighty-five percent of the establishment's annual dollar volume of sales of goods so made or processed is made within the state.

The Secretary of Labor contends that Mother Hubbard's and Quick Shop, Inc., constitute an enterprise within the meaning of the Act, and that Mother Hubbard's, as a separate establishment within the enterprise, is not, as defendants claim, exempt from the Act under section 213(a)(4), since it does not meet the requirements for a "retail or service establishment" set forth in section 213(a)(2).

■ It is clear that Mother Hubbard's and Quick Shop, Inc., are an enterprise as defined in section 203(r) of the Act, since they have performed related activities through unified operation and common control for a common business purpose and have the necessary contacts with interstate commerce.

■ A fundamental requirement for exemption under section 213(a)(4) is that the establishment meet the requirements of section 213(a)(2) for a "retail or service establishment." *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). As noted above, subsection (a)(2) defines such an establishment as one seventy-five percent of whose sales is not for resale and is recognized as retail sales in the industry.

Defendants seem to base their claim for exemption as a retail-manufacturer under section 213(a)(4) on their contention that Mother Hubbard's only sales for resale were the sales to the franchise outlets, never greater than 19.1 percent and well within the twenty-five percent limitation on such sales imposed by section 213(a)(2). Defendants assert that the distribution of bakery goods by Mother Hubbard's to the stores owned and operated by Quick Shop, Inc., (hereinafter "the QSI–owned stores") were not sales for resale, but either retail sales, or not "sales" at all. Since the value of the goods distributed to the QSI–owned stores was never less than approximately sixty percent, their categorization as sales for resale would clearly exclude Mother Hubbard's from the 213(a)(4) exemption. As noted above, the percentage figures for sales to the QSI–owned stores were calculated from the "retail" rather than the actual discount price charged to the QSI–owned stores. Even if calculated with the actual discount price, as discussed below, the percentage of sales for resale would be far above the twenty-five percent limitation.

■ Defendants attempt to define the sales to the QSI–owned stores as retail by stating that the goods were charged to the stores at ". . . the retail price . . . less 25% to 30%." This argument is specious at best. By whatever name, the transactions between the bakery and the retail stores were more analogous to wholesale than retail dealings. As defined by the Supreme Court in *Roland Electrical Co. v. Walling,* 326 U.S. 657, 675, 66 S.Ct. 413, 421,

90 L.Ed. 383 (1946), "retail" means ". . . sales made in small quantities to ultimate consumers to meet personal rather than commercial and industrial uses of those articles." The term in no way can be stretched to encompass discount sales by a producer of goods to retailers of those goods.

■■■ Defendants also argue that the distribution of goods by Mother Hubbard's to the QSI–owned stores were not "sales" since Quick Shops, Inc., already owns the equipment and raw materials utilized to produce the goods, with Mother Hubbard's furnishing only the labor to produce and transport the goods. Common ownership of non-retail and retail businesses will not automatically bring the former within the retail business exemption. If the businesses are functionally and physically distinct, they will be considered separate establishments which must independently qualify for the exemption. *A. H. Phillips, Inc. v. Walling,* 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); *Shultz v. Adair's Cafeterias, Inc.,* 420 F.2d 390 (10th Cir. 1969). In denying a retail exemption under section 213(a)(2) to the central office and warehouse employees of a retail chain store system, the Supreme Court in *Phillips* stated:

"There are, to be sure, certain distinctions between the wholesale activities of a chain store system and those of an independent wholesaler. Thus a chain store enterprise does not customarily sell merchandise in its warehouse to retailers or other wholesale customers as does an independent wholesaler. The goods stored in a chain store warehouse are merely distributed rather than sold to the retail stores. [citations omitted] But this and other differences that can be found arise from the fact that the chain organizations have completely meshed the retail and wholesale functions.

\*  \*  \*  \*  .  \*  \*

"In a realistic sense, therefore, most chain store organizations are merchandising institutions of a hybrid retail-wholesale nature. They possess the essential characteristics of both the retailer and

the wholesaler. Their wholesale functions, which are integrated with but are physically distinct from their retail functions, are performed through their warehouses and central offices. That fact is the essential key to the problem presented by this case. It serves to make clear the inapplicability of section 13(a)(2) to petitioner's warehouse and central office employees." 324 U.S. at 494–96, 65 S.Ct. at 809.

Similarly, in *Shultz v. Adair's Cafeterias, Inc.,* supra, the Court held that the bakery for a restaurant-cafeteria chain was a separate establishment for purposes of exemption and though "not strictly a wholesale operation," functioned as such and was thereby precluded from exemption under sections 213(a)(2) and (4).

■■■ Although the goods here, as in *Phillips* and *Shultz,* were not technically "sold" to the retail outlets, a distinct wholesaling function for the Quick Shop, Inc., chain store system was provided by the Fenton bakery facility. The fact that there was a retail outlet on the premises of the bakery facility does not alter the status of the establishment, since the bakery still has to meet the requirements of section 213(a)(2). Even with the retail outlet the bakery does not qualify as a retail-manufacturer since the outlet's retail sales did not comprise the required seventy-five percent of the establishment's annual dollar volume of sales.

■■■ The administrative regulations promulgated pursuant to the Act support these findings. 29 C.F.R. § 779.348(a) provides in pertinent part:

"[G]oods which the exempt establishment makes or processes must be made or processed at the establishment which sells the goods. The exemption does not apply to an establishment which makes or processes goods for sale to customers who will go to other places to buy them. Thus an establishment that makes or processes any goods which the employer will sell from another establishment, is not exempt. If the establishment making the

goods does not sell such goods but makes them for the purpose of selling them at other establishments the establishment making the goods is a factory and not a retail establishment."

Section 779.349 provides in pertinent part:

"An establishment will not lose an otherwise applicable exemption under section 13(a)(4) merely because some of its sales of goods made or processed at the establishment are sales for resale or are not recognized as retail sales in the particular industry. Sales for resale, such as wholesale sales, and other sales not recognized as retail sales in the industry, will be counted in the 25-percent tolerance permitted by the exemption."

Interpretive regulations issued by the Secretary of Labor are generally valid and binding, as a reasonable exercise of delegated authority. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Gilreath v. Daniel Funeral Home, Inc.,* 421 F.2d 504 (8th Cir. 1970).

■ The parties have agreed that if liability under the Act is found, the amount due each affected employee is a matter of clerical computation from defendants' payroll records which could be easily accomplished and submitted to the Court. The parties will present such a computation. Interest on the amount so computed will be awarded at the rate of six percent per annum from the respective dates the wages became due. *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179 (8th Cir. 1975); *Hodgson v. American Can Co.,* 440 F.2d 916 (8th Cir. 1971).

There is no evidence of any continuing violations of the Act by defendants. Accordingly, plaintiff's request for a permanent injunction restraining further violation of the Act will be denied.